1   JOANNA R. MENDOZA, (Cal. State Bar No. 148320)
    LAW OFFICES OF JOANNA R. MENDOZA, P.C.
2   P.O. Box 2593
    Granite Bay, CA  95746
3   (916) 781-7600
    (916) 781-7601 FAX
4   jmendoza@theiplawfirm.com

5   Attorneys for Plaintiffs
    THOMAS T. AOKI, M.D., and
6   AOKI DIABETES RESEARCH INSTITUTE

7

8                        UNITED STATES DISTRICT COURT

9                        EASTERN DISTRICT OF CALIFORNIA

10

11  THOMAS T. AOKI, M.D., an individual, and  )  CASE NO.
    AOKI DIABETES RESEARCH INSTITUTE,         )
12  a California Non-Profit Corporation,      )
                                              )  **COMPLAINT FOR:**
13                        Plaintiffs,          )
                                              )   1) **Patent Infringement**
14    vs.                                      )   2) **Copyright Infringement**
                                              )   3) **Trade Secret Misappropriation**
15  GREGORY FORD GILBERT, an individual;      )   4) **False and Misleading**
    BIONICA, INC., a Nevada corporation;      )      **Advertising [Lanham Act – 15**
16  BIONICA INT'L, LLC, a California limited  )      **USC §1125(a)(1)]**
    liability company; TRINA HEALTH, LLC, a   )   5) **False and Misleading**
17  California limited liability company; TRINA )      **Advertising [Cal. Bus. & Prof.**
    HEALTH OF NEWPORT BEACH, LLC, a           )      **Code §17500]**
18  California limited liability company; DEEPAL )   6) **Breach of Fiduciary Duty**
    CEMO MEDICAL SOLUTIONS, LLC, a            )   7) **Breach of Confidential**
19  California limited liability company also doing )      **Relationship**
    business as AMERICAN DIABETES             )   8) **Unfair Competition [Lanham**
20  THERAPY CENTERS; SAMMY F. CEMO, an        )      **Act – 15 USC §1125(a)]**
    individual; DEEPAL WANNKUWATTE, an        )   9) **Unfair Competition [Cal. Bus.**
21  individual; HEALTH INNOVATIONS, LP, a     )      **& Prof. Code §17200]**
    California limited partnership; ACSRC, LLC, a )
22  Delaware limited liability company; GARY J. )
    MUGG, an individual; SHUYUAN "SHERRY")
23  TANG, an individual; MEDEDCO, LLC, an     )     **JURY TRIAL DEMANDED**
    Arizona limited liability company; DIABETIC )
24  INNOVATIONS, LLC, a Texas limited liability )
    company; MELANIE J. KUNZ, an individual;  )
25  MICHAEL R. McCARTHY, an individual;       )
    MARC R. ROSE, M.D., an individual; KEVIN  )
26  J. BUCKMAN, M.D., an individual; and DOES )
    1 – 50, inclusive,                        )
27                                            )
                          Defendants.          )
28  _____ )

1   Plaintiffs THOMAS T. AOKI, M.D., and AOKI DIABETES RESEARCH INSTITUTE

2   do hereby complain against the above-named defendants and allege as follows:

3   **JURISDICTION AND VENUE**

4   1.   This is a Complaint for Patent Infringement arising under the patent laws of the

5   United States (Title 35 of the United States Code), for Copyright Infringement arising under the

6   copyright laws of the United States (Title 17 of the United States Code), for Unfair Competition

7   and False and Misleading Advertising arising under the Lanham Act (Title 15 of the United

8   States Code), and for related business torts and statutory violations including under common law

9   and California statutory law.

10   2.   This Court has original and exclusive subject matter jurisdiction over this action,

11   without regard to the amount in controversy or the citizenship of the parties, pursuant to 28

12   U.S.C. §§ 1331, 1338(a) and (b).

13   3.   This Court has supplemental jurisdiction over the remaining claims for relief,

14   without regard to the amount in controversy or the citizenship of the parties, under 28 U.S.C.

15   §1367(a), because these claims arise out of the same set of facts and circumstances and form part

16   of the same case or controversy.

17   4.   Venue is proper in this Court pursuant to 28 U.S.C. §1391 because (1) one or

18   more of the Defendants reside in the Eastern District of California; (2) a substantial part of the

19   events giving rise to Plaintiff's claims occurred, and continue to occur, in this District; and (3) a

20   substantial part of the Plaintiff's intellectual property which is the subject of this action is

21   situated in this District.

22   **THE PARTIES**

23   5.   Plaintiff THOMAS T. AOKI, M.D. (hereinafter "Dr. Aoki") is an individual

24   residing in Sacramento, California, and is a physician licensed to practice in the State of

25   California.

26   6.   Plaintiff AOKI DIABETES RESEARCH INSTITUTE (hereinafter "ADRI") is a

27   California non-profit medical research corporation with its principal place of business in

28   Sacramento, California.

7.      Defendant GREGORY FORD GILBERT (hereinafter "Gilbert") is an individual residing in Sacramento County, California, and an attorney at law licensed to practice by the State of California.  Gilbert's principal place of business is located in McClellan, California, where he operates as the founder and principal owner of defendants BIONICA, INC.,  BIONICA INTERNATIONAL, LLC, TRINA HEALTH, LLC, and TRINA HEALTH OF NEWPORT BEACH, LLC (together with numerous other non-defendant entities), acting as the sole officer, director and controlling shareholder or member of those business entities.  Upon information and belief, Defendant Gilbert is also doing business under the fictitious names "Artificial Pancreas Treatment Clinics," "diabetes.net," and "Diabetes Network."  Upon further information and belief, defendant Gilbert participates in the operation and/or control of websites www.diabetes.net and www.stopdiabetesmd.com, and a clinic located in Newport Beach, California (hereinafter the "Newport Beach Clinic").

8.      Defendant BIONICA, INC. is a Nevada corporation, registered to do business in the State of California with its principal place of business in McClellan, California.  Defendant BIONICA INTERNATIONAL, LLC, is a California limited liability company with its principal place of business in McClellan, California.   These two defendants shall be referred to herein as "Bionica."  Upon information and belief, defendant Bionica operates and controls the website www.bionicainc.com.

9.      Upon information and belief, defendant Bionica is, and at all times herein mentioned was, a mere sham and shell, organized and operated as the alter ego of defendant Gilbert for his personal benefit and advantage, and in an effort to avoid personal liability, in that:

a.   Defendant Gilbert has at all times herein mentioned exercised total dominion and control over defendant Bionica, and operated said company out of a single location with multiple other alleged businesses owned and controlled by defendant Gilbert;

b.   Defendant Gilbert is the sole officer, director and shareholder of defendant Bionica;

c.   Defendant Gilbert has so intermingled his personal and financial affairs and

alleged personal property with defendant Bionica, that it was, and is, the alter
ego of Gilbert;

    d.   Defendant Gilbert has failed to observe and comply with corporate
formalities (as applicable) required by law;

    e.  Defendant Bionica is, and at all times herein mentioned was, so inadequately
capitalized that, compared with the business done by Bionica and the risk of
loss attendant thereon, its capitalization was illusory.

10.     Adherence to the fiction of the separate existence of defendant Bionica as distinct from defendant Gilbert would permit an injustice and an abuse of the privileges provided by the entity structure and would sanction a fraud and promote injustice insofar as defendant Bionica is found liable for the acts actually committed by defendant Gilbert, defendant Bionica was merely a shield for such conduct.

11.     Defendant TRINA HEALTH, LLC, (recently known as Cellular Activation Therapy Clinics, LLC) (hereinafter "CATC") is a California limited liability company with its principal place of business in McClellan, California. Upon information and belief, defendant CATC participates in the operation and/or control of the website www.diabetes.net.

12.     Upon information and belief, defendant CATC is, and at all times herein mentioned was, a mere sham and shell, organized and operated as the alter ego of defendant Gilbert for his personal benefit and advantage, and in an effort to avoid personal liability, in that:

    a.  Defendant Gilbert has at all times herein mentioned exercised total dominion
and control over defendant CATC, and operated said company out of a single
location with multiple other alleged businesses owned and controlled by
defendant Gilbert;

    b.  Defendant Gilbert is the sole member of defendant CATC;

    c.  Defendant Gilbert has so intermingled his personal and financial affairs and
alleged personal property with defendant CATC, that it was, and is, the alter
ego of Gilbert;

    d.   Defendant Gilbert has failed to observe and comply with the statutory

COMPLAINT FOR PATENT INFRINGEMENT ETC.

1  formalities (as applicable) required by law;

2      e. Defendant CATC is, and at all times herein mentioned was, so inadequately

3      capitalized that, compared with the business done by CATC and the risk of

4      loss attendant thereon, its capitalization was illusory.

5      13.    Adherence to the fiction of the separate existence of defendant CATC as distinct

6  from defendant Gilbert would permit an injustice and an abuse of the privileges provided by the

7  entity structure and would sanction a fraud and promote injustice insofar as defendant CATC is

8  found liable for the acts actually committed by defendant Gilbert, defendant CATC was merely a

9  shield for such conduct.

10      14.    Defendant TRINA HEALTH OF NEWPORT BEACH (recently known as Costa

11  Mesa Cellular Activation Therapy Clinic, LLC, and hereinafter referred to as "CM CATC"), is a

12  California limited liability company with its principal place of business in McClellan, California.

13  Upon information and belief, defendant CM CATC, together with defendant Gilbert, operates

14  and controls the Newport Beach Clinic.

15      15.    Upon information and belief, defendant CM CATC is, and at all times herein

16  mentioned was, a mere sham and shell, organized and operated as the alter ego of defendant

17  Gilbert for his personal benefit and advantage, and in an effort to avoid personal liability, in that:

18      a. Defendant Gilbert has at all times herein mentioned exercised total dominion

19      and control over defendant CM CATC, and operated said company out of a

20      single location with multiple other alleged businesses owned and controlled

21      by defendant Gilbert;

22      b. Defendant Gilbert is the sole member of defendant CM CATC;

23      c. Defendant Gilbert has intermingled his personal and financial affairs and

24      alleged personal property with defendant CM CATC;

25      d. Defendant Gilbert has failed to observe and comply with the statutory

26      formalities (as applicable) required by law;

27      e. Defendant CM CATC is, and at all times herein mentioned was, so

28      inadequately capitalized that, compared with the business done by CM CATC

COMPLAINT FOR PATENT INFRINGEMENT ETC.

1    and the risk of loss attendant thereon, its capitalization was illusory.

2    16.    Adherence to the fiction of the separate existence of defendant CM CATC as

3    distinct from defendant Gilbert would permit an injustice and an abuse of the privileges provided

4    by the entity structure and would sanction a fraud and promote injustice insofar as defendant CM

5    CATC is found liable for the acts actually committed by defendant Gilbert, defendant CM CATC

6    was merely a shield for such conduct.

7    17.    Defendant DEEPAL CEMO MEDICAL SOLUTIONS, LLC, a California limited

8    liability company, also doing business under the fictitious name "American Diabetes Therapy

9    Centers" (hereinafter "ADTC"), and is a California limited liability company with its

10    administrative offices located in El Dorado Hills, California, and a clinic/treatment center located

11    in Roseville, California (hereinafter the "Roseville Clinic").. Upon information and belief,

12    ADTC operates and controls the websites www.americandiabetestherapy.com,

13    www.americandiabetestherapycenters.com, and www.diabetestherapycenters.com.

14    18.    Defendant SAMMY F. CEMO (hereinafter "Cemo"), is an individual residing in

15    Orangevale, California, and is a member/manager of defendant ADTC.

16    19.    Defendant DEEPAL WANNKUWATTE (hereinafter "Deepal"), is an individual

17    residing in the Eastern District of California, and is a member/manager of defendant ADTC.

18    20.    Defendant HEALTH INNOVATIONS, LP (hereinafter "HI"), is a California

19    limited partnership, with its principal place of business in Dublin, California. Upon information

20    and belief, defendant HI operates and controls the website www.health-innovations.us and a

21    clinic in Hayward, California (hereinafter the "Hayward Clinic").

22    21.    Defendant ACSRC, LLC (hereinafter "ACSRC"), is a Delaware limited liability

23    company with its principal place of business in Dublin, California, and is the general partner of

24    defendant HI.

25    22.    Defendant GARY J. MUGG (hereinafter ("Mugg"), is an individual residing in

26    Contra Costa County, California, and is an attorney at law licensed to practice by the State of

27    California.  Defendant Mugg's principal place of business is located in Dublin, California,

28    where, upon information and belief, he operates as a principal of defendants HI and ACSRC and

6

COMPLAINT FOR PATENT INFRINGEMENT ETC.

1   the Hayward Clinic..

2       23.     Defendant SHUYUAN "SHERRY" TANG (hereinafter "Tang"), is an individual

3   who, upon information and belief is residing in Contra Costa County, California, and is an

4   attorney at law licensed to practice by the State of California.  Defendant Tang's principal place

5   of business is located in Dublin, California, where, upon information and belief, she operates as a

6   principal of defendants HI and ACSRC and the Hayward Clinic.

7       24.     Defendant MELANIE J. KUNZ (hereinafter "Kunz"), is an individual residing in

8   the State of Arizona.  Upon information and belief, defendant Kunz is a licensed registered nurse

9   in Arizona, and during the period of January 10, 2007, to November 30, 2010, held a license as a

10  registered nurse in the State of California.

11      25.     Defendant MEDEDCO, LLC (hereinafter "MedEdCo"), is an Arizona limited

12  liability company with its principal place of business in Arizona and a second office in

13  Sacramento, California. Plaintiffs are informed and believe and thereon allege that defendant

14  MedEdCo's controlling member is defendant Kunz.

15      26.     Upon information and belief, defendant MedEdCo is, and at all times herein

16  mentioned was, a mere sham and shell, organized and operated as the alter ego of defendant

17  Kunz for her personal benefit and advantage in that:

18          a.  Defendant Kunz has at all times herein mentioned exercised total dominion

19              and control over defendant MedEdCo, and operated said company out of her

20              personal residence;

21          b.  Defendant Kunz is the controlling member of defendant MedEdCo;

22          c.  Defendant Kunz has so intermingled her personal and financial affairs with

23              defendant MedEdCo, that it was, and is, the alter ego of defendant Kunz;

24          d.   Defendant Kunz has failed to observe and comply with the statutory

25              formalities (as applicable) required by law;

26          e.  Defendant MedEdCo is, and at all times herein mentioned was, so

27              inadequately capitalized that, compared with the business done by MedEdCo

28              and the risk of loss attendant thereon, its capitalization was illusory.

27.    Adherence to the fiction of the separate existence of defendant MedEdCo as distinct from Kunz would permit an injustice and an abuse of the privileges provided by the entity structure and would sanction a fraud and promote injustice insofar as defendant MedEdCo is found liable for the acts actually committed by defendant Kunz, defendant MedEdCo was merely a shield for her conduct.

28.    Defendant DIABETIC INNOVATIONS, LLC (hereinafter "DI"), is a Texas limited liability company with its principal place of business in Sachse, Texas.  Upon information and belief, defendant DI operates and controls a clinic in Sachse, Texas (hereinafter the "Texas Clinic"), and the website www.diabeticinnovations.com., as well as content placed on the website www.cphomes.us.  Plaintiffs are further informed and believe that defendants Gilbert and Kunz are both managing members of defendant DI.

29.    Defendant MICHAEL R. McCARTHY (hereinafter "McCarthy"), is an individual residing in Ontario, California, and doing business with defendant Rose under the fictitious name "Diabetes Network."  Upon information and belief, defendant McCarthy participates in the operation and control of the websites www.stopdiabetesmd.com and www.stopdiabetesmd.net.

30.    Defendant MARC R. ROSE, M.D. (hereinafter "Rose"), is an individual residing in Costa Mesa, California, and is a physician licensed to practice in the State of California. Upon information and belief, defendant Rose is doing business with defendant McCarthy under the fictitious name "Diabetes Network" and participates in the operation and control of the website www.stopdiabetesmd.com and www.stopdiabetesmd.net.

31.    Defendant KEVIN J. BUCKMAN, M.D. (hereinafter "Buckman"), is an individual residing in Stockton, California, and is a physician licensed to practice in the State of California. Upon information and belief, defendant Buckman is the medical director for both the Roseville Clinic and the Hayward Clinic and is further affiliated with the Texas Clinic as evidenced by a webinar which appears as a link on the Texas Clinic's website.

32.    The true names, capacities and identities of defendants sued herein and under the fictitious names of DOES 1 through 50, inclusive, whether individual, corporate or otherwise, are unknown to plaintiffs at this time, and plaintiffs will amend this complaint by inserting the

1   true names of said defendants when said true names and identities are ascertained.  Plaintiffs are

2   informed and believe, and based on said information and belief, allege thereon that each of the

3   defendants designated herein as DOES 1 through 50, inclusive, is legally responsible in some

4   manner for the events and happenings herein referred to, and all of plaintiffs' injuries and

5   damages as herein alleged were proximately caused by said defendants.

6       33.     Plaintiffs are further informed and believe and thereon allege that at all times

7   herein mentioned, each of the defendants was acting as agent, employee, servant, partner, and/or

8   joint venturer of the remaining defendants, and all the acts complained of herein were done

9   within the course and scope of said agency, employment, servitude, partnership and/or joint

10  venture, and that all acts alleged herein committed by each defendant were ratified and approved

11  by the remaining defendants and/or done with the knowledge, consent and permission of the

12  other defendants.

13

14              **FACTUAL BACKGROUND COMMON TO ALL CLAIMS**

15

16  **The Technology at Issue – The Aoki Patents and Related Know-How**

17      34.     Plaintiff Dr. Aoki is a world-renowned expert in endocrinology, diabetes and

18  metabolism.  He is the former head of Metabolism Research at Joslin Diabetes Center in Boston,

19  Massachusetts, and a current Professor Emeritus at the University of California, Davis, School of

20  Medicine.  Dr. Aoki and his ground-breaking work in this specialized field of medicine is the

21  foundation upon which ADRI was created.

22      35.     ADRI was founded in 1986 by plaintiff Dr. Aoki to further his research efforts in

23  the areas of diabetes and metabolism.  ADRI also provides clinical care for patients with

24  metabolic disorders, including treatment of patients with a type of intravenous insulin therapy

25  called metabolic activation therapy or MAT® treatment.  Research conducted by Dr. Aoki and

26  ADRI includes basic science laboratory investigations and observational studies of clinical

27  outcomes.  While some of ADRI's patients receive the MAT® treatment as part of enrolled

28  research studies, patients are also referred to ADRI for MAT® treatments when they have

1    progressive diabetic complications despite standard intensive therapy recommended by the

2    American Diabetes Association.

3         36.    As the sole inventor and developer of the MAT® treatment, in May 1989, Dr.

4    Aoki received a patent from the United States Patent and Trademark Office for the original

5    MAT® treatment – U.S. Patent No. 4,826,810 (hereinafter "810 Patent"), titled "System and

6    method for treating animal body tissues to improve the dietary fuel processing capabilities

7    thereof." The system involved administering a dietary fuel of a preselected type and quantity to

8    the subject to produce in the blood supply to the predetermined body tissues a substantially

9    elevated carbohydrate concentration during a time following such administration.  During at least

10   a portion of that time period of elevated carbohydrate concentration, insulin is injected into the

11   subject in accordance with a prearranged insulin concentration versus time function.  The insulin

12   injection function produces a rapid increase in the free insulin concentration in the blood supply

13   to the involved body tissues and is preferably a prearranged series of spaced insulin pulses that

14   produce a series of peaks in the free insulin concentration in the blood supply to the target tissues

15   and a continuously rising interpeak value of free insulin concentration.  What results therefrom

16   these effects is a functional improvement in the dietary fuel processing capability of the involved

17   body tissues. A computer controlled insulin pumping system functions under program control to

18   provide the series of insulin pulses.  Included within the patent claims are ranges for the insulin

19   used and frequency of the pulses.

20        37.    During the development of the 810 Patent and continuing thereafter, Dr. Aoki and

21   ADRI developed trade secret know-how related to the use and application of the invention set

22   forth in the 810 Patent.

23        38.    Administration of the 810 Patent system and method on human patients was

24   intended to only be administered and closely supervised by physicians who received specialized

25   training from ADRI or by ADRI trained medical professionals operating under the immediate

26   supervision of ADRI trained physicians.  If not properly administered, IV insulin may cause

27   death or severe injury to the patient.

28        39.    Subsequent to his work on the 810 Patent, Dr. Aoki began developing methods

1   and systems which, using a similar form of pulsatile intravenous insulin, were designed in a

2   manner to treat major diseases suffered by both diabetic and non-diabetic patients.  These

3   developments are covered by patents and trade secret know-how associated with the optimal

4   application of the methods on patients seeking the treatment.

5         40.    The U.S. Patents at issue in this action are as follows:

6           a.  US Patent No. 6,579,531 ("531" Patent) is described as a "Method for treating

7              heart disease and cardiovascular disease in diabetic and non-diabetic patients"

8              and was issued on June 17, 2003.  More specifically, the invention is a system

9              and method using intermittent insulin pulses intravenously to achieve an

10             increase in dietary fuel capabilities and to correct an overutilization of free

11             fatty acids associated with heart disease and cardiovascular disease.

12          b.  US Patent No. 6,582,716 ("716" Patent) is described as a "Method for treating

13             wounds, promoting healing and avoiding amputations in diabetic and non-

14             diabetic patients" and was issued on June 24, 2003.  More specifically, the

15             invention is a system and method using intermittent insulin pulses

16             intravenously to achieve an increase in glucose oxidation in tissues

17             surrounding an affected area, therefore treating wounds, promoting healing

18             and avoiding amputations.

19          c.  US Patent No. 6,613,342 ("342" Patent) is described as a "System and method

20             for treating kidney diseases in diabetic and non-diabetic patients" and was

21             issued on September 2, 2003.  More specifically, the invention is a method

22             using intermittent insulin pulses intravenously to achieve the slowing,

23             stopping or reversing of kidney disease.

24          d.  US Patent No. 6,613,736 ("736" Patent) is described as a "System and method

25             for treating eye and nerve diseases in diabetic and non-diabetic patients" and

26             was issued on September 2, 2003.  More specifically, the invention is a

27             method using intermittent insulin pulses intravenously to achieve an increase

28             in retinal and neural glucose oxidation by enhancing pyruvate dehydrogenase

activity and, therefore, treating retinopathy and central nervous system disorders.

e.  US Patent No. 6,821,527 ("527" Patent) is described as a "System for treating kidney disease in diabetic and non-diabetic patients" and was issued on November 23, 2004.  More specifically, the invention is a system using intermittent insulin pulses intravenously to achieve the slowing stopping or reversing of kidney disease.

f.  US Patent No. 6,967,191 ("191" Patent) is described as a "System for treating eye and nerve diseases in diabetic and non-diabetic patients" and was issued on November 22, 2005.  More specifically, the invention is a system using intermittent insulin pulses intravenously to achieve an increase in retinal and neural glucose oxidation by enhancing pyruvate dehydrogenase activity and, therefore, treating retinopathy and central nervous system disorders.

g.  US Patent No. 7,682,351 ("351" Patent) is described as a "Method for improving hepatic glucose processing in diabetic and non-diabetic patients" and was issued on March 23, 2010.  More specifically, the invention is a method which delivers a series of insulin pulses to the subject over a period of time accompanied by ingestion of glucose in the form of a carbohydrate containing meal.  The amount of insulin in each pulse, the interval between pulses and the amount of time to deliver each pulse to the subject are selected so that the hepatic processing of glucose is restored in the subject, together with a subsequent fall in circulating blood glucose levels of 50 mg/dl or more directly as a result of improved hepatic glucose processing.

41.  Collectively, the patents identified hereinabove (a through g) shall be referred to herein as "the Patents," and called Metabolic Activation Therapy when the trade secret know-how associated with the administration of the Patents is included (hereinafter collectively referred to as "MAT®" – a registered trademark owned by plaintiff Dr. Aoki).

/ / /

**ADRI 's License to Use the MAT® Treatment**

42.     Dr. Aoki has provided plaintiff ADRI with a non-exclusive, non-transferable royalty-free license to use, practice and otherwise perform the claims asserted in the Patents, together with all know-how related thereto, including any procedure which incorporates or uses any aspect of that technology, for clinical and research purposes, within the United States. Plaintiff ADRI has no right to sublicense to others.  In addition, under the terms and conditions of the license, plaintiff ADRI maintains the right to prosecute any action for infringement against any third party infringer, including the ability to seek recovery of all losses, costs, damages or expenses, including attorneys' fees incurred as a result of said infringement.  It is under the terms of this license agreement that plaintiff ADRI asserts standing to prosecute the claims for patent infringement asserted herein.

43.     Plaintiff Dr. Aoki does not currently have a license to use his Patents in the United States provided to any other person or firm except ADRI.

**Defendant Gilbert's Early Involvement with Dr. Aoki and ADRI**

44.     Over the course of several years, defendant Gilbert was retained by and acted as the personal attorney for plaintiff Dr. Aoki.  During that same period, defendant Gilbert became engaged in business transactions with his client, Dr. Aoki, including setting up legal entities to exploit Dr. Aoki's technology – entities in which defendant Gilbert would appoint himself as a director and officer.  Once defendant Gilbert set up the legal entities for Dr. Aoki, he would then also act as legal counsel to the entities, including plaintiff ADRI.  In that capacity defendant Gilbert drafted nearly every legal document for those entities and Dr. Aoki, and he provided legal advice to both plaintiffs until the relationship came to a bitter end in late 2002/early 2003.

45.     The end of the relationship between defendant Gilbert, Dr. Aoki and ADRI occurred after the plaintiffs learned that defendant Gilbert had "used" corporate funds without permission in 2002 to purchase, for Gilbert's own benefit, the trade name, pumps and parts from an Australian company named Bionica.  Thus, defendant Gilbert acquired the rights to the Bionica pump and name (for which he later would take sole credit for developing).  At the time that defendant Gilbert acquired the Bionica rights and created a legal entity for his own benefit

(defendant Bionica), the Bionica pump had been used, in the patents, as an example of one of the many infusion pumps that could be used for the MAT® treatment.  It has never been the only infusion pump available to use with the Patents, and the Bionica pump is not and never has been part of the technology covered by the Patents.

46.     During the period in which defendant Gilbert acted as legal counsel to Dr. Aoki and ADRI, as well as his role as an officer and director of ADRI, he had a confidential and fiduciary relationship during which he acquired a significant amount of confidential information which was disclosed to him with the mutual understanding that the information was being disclosed in confidence and that the confidence be maintained.  Not only was defendant Gilbert provided confidential business information, he was made aware of certain "know how" and trade secrets associated with the protocols used with the Patents.  The plaintiffs have never waived their rights to assert the confidentiality of these matters, nor have they provided permission to defendant Gilbert to disclose said information to others not under a similar duty of confidentiality with Dr. Aoki and ADRI.

**Defendant Gilbert Infringes His Clients' IP Rights by Engaging Defendants to Compete**

47.     Upon information and belief, after the relationship between defendant Gilbert and the plaintiffs was terminated, defendant Gilbert began to engage in conduct designed to harm the plaintiffs and benefit himself by falsely asserting that Gilbert, Bionica and/or CATC  held all right, title and interest in the MAT® treatment.

48.     Upon information and belief, at the time that defendant Gilbert's relationship with the plaintiffs was terminated by the plaintiffs, defendant Kunz was involved in a personal relationship with defendant Gilbert.  It was through that personal relationship that defendant Kunz became familiar with the MAT® treatment.  In or about 2002, and under an obligation of confidentiality, defendant Kunz (a registered nurse in Arizona and California) received incomplete and limited training by the plaintiffs with respect to treating patients with MAT® treatment under the supervision of a physician.  Defendant Kunz did not receive all the necessary training because she failed to participate fully.

49.     Despite her lack of complete training in the use of MAT® treatment, and upon

1  information and belief, in 2004 defendant Kunz founded defendant MedEdCo specifically for the

2  purpose of providing "clinical support services" to assist defendants Gilbert, Bionica and CATC

3  in setting up clinics to offer the MAT® treatment.  Upon further information and belief, Kunz,

4  purported to provide "professional" training to physicians, clinical oversight, medical advisory

5  board support, patient education, and quality assurance services for the clinics that Gilbert and

6  his entities would convince others to open up.  However, defendant Kunz was not, and never has

7  been, qualified to train anyone, let alone physicians, with respect to treating patients with the

8  MAT® treatment.

9       50.    Thus, upon information and belief, the only person identified as providing these

10  training and clinical services to the clinics owned and operated by the other defendants has *never*

11  *been sufficiently qualified to do so*, resulting in wholly inadequate: (a)  training of the defendants

12  and their agents, employees and those acting in concert with them at the clinics, (b)

13  understanding of the treatment and possibility of adverse consequences which have been and can

14  be suffered by the patients as a result of how the MAT® treatment is applied; and (c) safety

15  measures which should be engaged during the MAT® treatment.   This creates an unacceptable

16  risk to the general public and any patients who may seek treatment at the defendants' clinics.

17       51.    With defendants Kunz and MedEdCo set up to assist him in his scheme to use his

18  former clients' technology in violation of his obligations and duties as an attorney under

19  California law, and in violation of his ongoing fiduciary duties as a former officer and director of

20  ADRI, defendant Gilbert/Bionica/CATC acted in concert with the remaining defendants to set up

21  clinics where the MAT® treatment would be offered to patients suffering from serious health

22  complications (in other words, preying upon some of the weakest and most desperate

23  individuals in our society), using false and misleading statements regarding the status and

24  efficacy of the treatment in order to give the patients false hope, and making false promises that

25  those patients would receive insurance and/or MediCare coverage to pay for the treatment.

26       52.    Defendant Gilbert's website, www.diabetes.net, is the "hub" website which ties

27  together the clinics set up in Roseville, Hayward, Newport Beach, Miami Beach, Shreveport and

28  Hong Kong (it even has a page for the clinics with respect to buying supplies and equipment

1    through defendant Gilbert).  Defendant Gilbert, and the entities he has created for his benefit

2    (and as an attempt to avoid liability for his knowing and intentional conduct), uses his website

3    www.diabetes.net to distribute false and misleading information about the MAT® treatment.

4    The misinformation disseminated by defendant Gilbert on that website includes, but is not

5    limited to, the following examples:  (a) statements whereby defendant Gilbert himself takes full

6    credit for developing the MAT® treatment rather than Dr. Aoki; (b) statements whereby

7    defendant Gilbert himself takes full credit for developing the Bionica infusion pump which he

8    purchased from an Australian company that built the device; (c) referring to the MAT®

9    treatment as "Artificial Pancreas" System or Therapy, and falsely stating that it is FDA approved

10   and that it mimics a normal pancreas with respect to insulin secretion; (d) stating that there has

11   been over 100,000 treatments using the technology, which is a gross exaggeration; (e) falsely

12   stating that there has never been an adverse reaction; (f) falsely stating that there has never been

13   a pump failure; (g) stating that the treatment works on patients with Type 2 diabetes when there

14   is no scientific data to support that statement; (h) posting a diagram representing "proper" human

15   metabolism which is, in actuality, a diagram of biochemical pathways for worms, not people; (i)

16   stating that the treatment results in normalized carbohydrate and lipid metabolism when it does

17   not do so; (j) stating that the treatment stops the complications of diabetes when it does not, it

18   slows down the complications; (k) making statements of "fact" and certainty about how the

19   treatment impacts complications associated with diabetes without any data to support those

20   claims; and (l) referring to the clinical research results and trial information as data and

21   information created and owned by defendant Gilbert.

22          53.    Documents linked to the website www.diabetes.net include a presentation that

23   borrows significantly from content generated by Dr. Aoki, which was provided to defendant

24   Gilbert for his personal use only, and which was to be maintained as confidential.

25          54.    Upon information and belief, defendant Gilbert's expressed goal is to make the

26   MAT® treatment available to "anyone and everyone who needs the treatment" and, in order to

27   do this, new clinics are being opened as quickly as funding can be obtained.  Thus, defendant

28   Gilbert has made it clear that he intends to continue to use the Patents of Dr. Aoki, along with the

1   know-how and trade secrets for optimizing the treatment, to the fullest extent possible, despite

2   having no authority to do so, unless and until he is stopped by a court of law.

3   **The Roseville Clinic is Opened**

4       55.     The plaintiffs are informed and believe and on that basis allege that the clinic

5   offering MAT® treatment in Roseville, California, is operated by defendants ADTC, Cemo and

6   Deepal, with participation of and assistance from defendants Gilbert, Bionica, CATC, Kunz,

7   MedEdCo, and Buckman.  Upon information and belief, the Roseville Clinic first began

8   providing services to patients on or about July 2010, offering plaintiffs' proprietary MAT®

9   treatment under the misleading moniker "Artificial Pancreas Therapy."

10      56.     The plaintiffs are further informed and believe, and on that basis allege, that on or

11  about July 29, 2010, and August 18, 2010, defendants Gilbert and ADTC put on presentations at

12  Lincoln Hills Sun City in Lincoln, California promoting the MAT® treatment which was being

13  offered at the Roseville Clinic.  At these presentations, defendant Gilbert falsely advertised to

14  those present that he developed the MAT® procedure, that the treatment "normalizes the

15  metabolism" of diabetics, that he and his associates were "the healing people of the world" and

16  that his proprietary treatment "improves *everything* in his diabetic patients."

17      57.     Information distributed by defendants Gilbert and ADTC at the Sun City

18  presentations acknowledge that the Roseville Clinic is using the Patents to provide the treatment

19  to patients.  The documentation falsely claims that there has never been an adverse reaction to

20  the treatment (there are adverse reactions that have occurred), that the treatment is "completely

21  safe" (it can result in death if not performed correctly), that it stops and in many cases reverses

22  the complications of diabetes (it does not), and that Type 2 diabetics respond to the treatment (no

23  peer reviewed data is provided to support this claim).   The documentation directed those present

24  to the website operated by defendant Gilbert, www.diabetes.net, for additional information.

25      58.     Upon further information and belief, defendant ADTC made another such

26  presentation on or about September 7, 2011, at Eskaton Roseville Manor in Roseville, California,

27  making the same or similar misrepresentations of fact and misleading statements.

28      59.     The website for the Roseville Clinic, www.americandiabetestherapy.com,

1   establishes the involvement of ADTC, Cemo, Deepal, Gilbert/Bionica/CATC, Kunz/MedEdCo,

2   and Buckman in the opening and operation of the Roseville Clinic.

3       60.    Upon information and belief, defendant Buckman resides and practices medicine

4   in or near Stockton, California.  He is identified on ADTC's website as an advisor and "Medical

5   Director" for the Roseville Clinic, thereby indicating that he has a management role with ADTC

6   and is an active participant in the willful infringement of the MAT® treatment.  It is not

7   believed, however, that defendant Buckman supervises or treats patients with MAT® treatment

8   at the Roseville Clinic -- he merely takes responsibility for that treatment.  Defendant Buckman

9   has never received proper and complete training in the MAT® treatment by plaintiffs.

10   Defendant Buckman's biographical information on the ADTC website implies that he received

11   his medical degree from USC and that he has written over ten patents for new medical and

12   environmental technologies – both of which are false and misleading.  Defendant Buckman

13   received his medical degree from the Autonomous University of Guadalajara Faculty of

14   Medicine, and his name appears as an inventor on only one U.S. patent in either medical or

15   environmental technologies.

16       61.    Plaintiffs allege on information and belief that defendant ADTC's website

17   contains many other false and misleading statements including, but not limited to, the following:

18   (a) defendant Kunz "has more clinical experience in [MAT®] protocol development than any

19   other practitioner;" (b) defendant Gilbert is the "owner of the patents for the Bionica pump used

20   in the treatment" insofar as (i) the Bionica patent in question expired in 1994 before Bionica was

21   acquired by Gilbert, and (ii) a more recent pump patent filed by Gilbert expired in 2011 and was

22   never made or used by anyone;  (c) defendant ADTC has an exclusive sublicense to the MAT®

23   treatment; (d)  defendant Gilbert/ CATC is the owner of the patented protocols for the MAT®

24   treatment; (e) MAT® treatment stops secondary complications of diabetes and reverses them in

25   most cases; (f) MAT® treatment and the Bionica Pump have been around for 20+ years and

26   performed over 100,000 treatments, and suggesting that all treatments have been performed

27   using the Bionica pump; and (g) defendants CATC and Bionica (aka Gilbert) take credit for

28   treatments performed by others.

62.     Upon information and belief, defendant ADTC's expressed goal is to provide many treatment centers for the MAT® treatment in order to treat as many diabetic people as possible.   Thus, the defendants associated with the Roseville Clinic have made it clear that they intend to continue to use the Patents of Dr. Aoki, without permission to do so, to the fullest extent possible unless and until they are stopped by a court of law.

63.     Upon further information and  belief, the Roseville Clinic is engaging in the corporate practice of medicine in violation of California Business & Professions Code §2400 et seq. and operating a clinic without first being licensed to do so in violation of California Health and Safety Code §1205.

**The Hayward Clinic is Opened**

64.     The plaintiffs are informed and believe and on that basis allege that the clinic offering MAT® treatment in Hayward, California, is operated by defendants HI, ACSRC, Mugg and Tang, with participation of and assistance from defendants Gilbert, Bionica, CATC, Kunz, MedEdCo, and Buckman.  Upon information and belief, the Hayward Clinic first began providing services to patients on or about May of 2011, offering plaintiffs' proprietary MAT® treatment under the misleading moniker "Artificial Pancreas Therapy."

65.     Upon information and belief, defendant Buckman is the "Medical Director" of the Hayward Clinic, thereby indicating that he has a management role with the Hayward Clinic and is an active participant in the willful infringement of the MAT® treatment.  The Hayward Clinic is staffed by a Nurse Practitioner or a Physician Assistant, who are themselves managed by defendant Buckman in his capacity of Medical Director operating from his practice in Stockton, California.  It is believed that defendant Buckman is not present at the Hayward Clinic when patients are treated

66.     For the benefit of the Hayward Clinic, and attached as a link to its website (which also contains false and misleading statements about the efficacy and safety of MAT® treatment), defendant Buckman's name appears as the author of a paper entitled "The Artificial Pancreas System: A Medical Review of the Literature and Unpublished Data – Diabetes Mellitus and the Role of the Artificial Pancreas System.  That document contains many false and misleading

1   statements designed to suggest a level of safety and efficacy of MAT® treatment that is not

2   supported by clinical trials or data – all for the purpose of encouraging individuals with chronic

3   disease to seek treatment from the defendants in order to increase their profits and income.  In

4   the document authored by defendant Buckman, plaintiffs are informed and belief and thereon

5   allege that defendant Buckman has changed the language used in describing scientific

6   conclusions or questions raised, all to transform scientific material into a false and misleading

7   publication designed to confuse and/or mislead the general public.

8          67.    Also on the Hayward Clinic's website, defendant Buckman presents a "webinar"

9   attached as a link.  During that webinar, defendant Buckman and the written presentation

10  together repeat many of the false and misleading statements found on the websites of defendant

11  Gilbert and the Roseville Clinic.

12         68.    The website for the Hayward clinic provides that a purpose of defendant HI is to

13  deliver clinical facilities and support to professionals in order to assist in the treatment of patients

14  with diabetes using the MAT® treatment.  Thus, the defendants associated with the Hayward

15  Clinic have made it clear that they intend to continue to use the Patents of Dr. Aoki, without

16  permission to do so, to the fullest extent possible unless and until they are stopped by a court of

17  law.

18         69.    Upon further information and  belief, the Hayward Clinic is engaging in the

19  corporate practice of medicine in violation of California Business & Professions Code §2400 et

20  seq. and operating a clinic without first being licensed to do so in violation of California Health

21  and Safety Code §1205.

22  **The Costa Mesa Clinic is Opened**

23         70.    The plaintiffs are informed and believe and on that basis allege that the clinic

24  offering MAT® treatment in Costa Mesa, California, is operated by defendants McCarthy and

25  Rose, with participation of and assistance provided by defendants Gilbert, Bionica, CATC, Kunz

26  and MedEdCo.  Upon information and belief, the Costa Mesa Clinic first began providing

27  services to patients on or about June of 2011, offering plaintiffs' proprietary MAT® treatment

28  under the name Cellular Activation Therapy ("CAT").

71.     The website operated by defendant Rose and McCarthy in several respects copies wholesale from the content which currently is or previously was found on defendant Gilbert's website www.diabetes.net.   It duplicates many of the false and misleading statements contained in defendant Gilbert's website, and the presentation material created and provided by Dr. Aoki in confidence to defendant Gilbert is also attached to this website without permission from Dr. Aoki.  Some of the more disturbing misrepresentations made on defendant McCarthy's and Rose's website is the assertion that the patient will be able to be reimbursed through MediCare and/or their health insurance company -- a fact known by the defendants to be false.

72.     The website for the Costa Mesa clinic provides that a purpose of defendants Rose and McCarthy is to make MAT® treatment available to those who need it, thereby requiring the defendants to assist others to open clinics that will perform the MAT® treatment.  Thus, defendants Rose and McCarthy have made it clear that they intend to continue to use the Patents of Dr. Aoki, without permission to do so, to the fullest extent possible unless and until they are stopped by a court of law.

73.     Upon further information and belief, the Costa Mesa Clinic is being operated without first being licensed to do so in violation of California Health and Safety Code §1205.

**The Newport Beach Clinic is Opened**

74.     The plaintiffs are informed and believe and on that basis allege that the clinic offering MAT® treatment in Newport Beach, California, is operated directly by defendant Gilbert and/or his entities Bionica, CATC and/or CM CATC, with the participation of and assistance provided by defendant Kunz and MedEdCo.  Upon information and belief, the Newport Beach Clinic first began providing services to patients on or about September or October 2011, offering plaintiffs' proprietary MAT® treatment under the misleading moniker "Artificial Pancreas Therapy."  The only website affiliated with the Newport Beach Clinic is defendant Gilbert's www.diabetes.net.

75.     On or around July 18, 2011, defendant Gilbert had advertising for the Newport Beach Clinic published in the Orange County Business Journal.  In that advertising defendant Gilbert falsely credits himself with "the most important advancement in diabetes since insulin."

1  Defendant Gilbert also falsely credits himself with the design for the Bionica pump, and that

2  "his" design mimics the pancreas (it does not).  He further gives himself credit for starting with

3  nothing and carrying the project through regulatory approvals and clinical trials at a cost of over

4  $40 million, all the way through final development, FDA approval (the treatment has not been

5  approved by the FDA) and now commercialization by clinics.  Defendant Gilbert states in that

6  advertisement that 100,000 treatments have occurred with no adverse reactions – both of which

7  are false.

8      76.    Upon further  information and  belief, the Newport Beach Clinic is engaging in

9  the corporate practice of medicine in violation of California Business & Professions Code §2400

10  et seq. and operating a clinic without first being licensed to do so in violation of California

11  Health and Safety Code §1205.

12  **The Texas Clinic is Opened**

13      77.    The plaintiffs are informed and believe and on that basis allege that a clinic

14  offering MAT® treatment in or near Sachse, Texas, has been opened directly by defendants DI,

15  Gilbert, and Kunz with participation by Bionica, CATC and MedEdCo to the extent those

16  entities are separate and distinct from defendants Gilbert and Kunz, if at all.

17      78.    The website affiliated with the Texas Clinic, www.diabeticinnovations.com,

18  contains multiple false and misleading statements which are similarly found on the websites of

19  defendant Gilbert and the other clinics.  The Texas Clinic's website also has a linked "webinar"

20  presented by defendant Buckman.  During that webinar, defendant Buckman and the written

21  presentation together  repeat many of the same false and misleading statements,

22      79.    The plaintiffs are further informed and believe that the defendants affiliated with

23  the Texas Clinic are responsible for providing the identical false and misleading material to be

24  presented on the website www.cphomes.us – a website created to offer investment opportunities

25  to non-U.S. citizens (and more particularly targeting Chinese citizens) that allegedly provide the

26  investor with an opportunity to obtain a green card under the EB-5 visa program.  Thus, these

27  defendants are encouraging non-U.S. citizens to invest $500,000 in a clinic that, when operating,

28  will violate multiple state and federal laws, simply for the purpose of obtaining a green card.

80.     Upon further information and belief, and in addition to offering MAT® treatment at the Texas Clinic, defendants DI, Gilbert (Bionica/CATC), Kunz (MedEdCo) offer their "management services" to set up third-party investors with a clinic that offers the MAT® treatment, including staffing assistance and training, billing support, managed care contract support, clinical oversight and management, patient referral services and local/national marketing – defendant DI's expressed goal is to provide the MAT® treatment to millions of diabetics and build as many clinics necessary to serve them.  Thus, the defendants associated with the Texas Clinic have made it clear that they intend to continue to use the Patents of Dr. Aoki, without permission to do so, to the fullest extent possible unless and until they are stopped by a court of law.

**Gilbert's Ongoing Conduct Resulting In Additional Clinic Openings**

81.     The plaintiffs are informed and  believe, and on that basis allege, that Gilbert, Bionica, CATC, Kunz and MedEdCo are engaging in ongoing infringing and tortious conduct by their direct participation in the opening of clinics to offer the MAT® treatment in other regions within the United States as well as in foreign countries, all of which appears to be confirmed on defendant Gilbert's website www.diabetes.net.

82.     Upon information and belief, individual defendants Gilbert and Kunz, and their respective entities, have recently participated in the creation and opening of  the following clinics where they are offering the MAT® treatment (under the misleading moniker "Artificial Pancreas Therapy") without the plaintiffs' permission to do so:

      a.   Miami Beach, Florida – opened on or about August or September 2011;

      b.   Hong Kong – opened on or about September or October 2011.

      c.   Shreveport, Louisiana – not yet open.

83.     These defendants have made it clear that they intend to continue to use the Patents of Dr. Aoki, without permission to do so, to the fullest extent possible unless and until they are stopped by a court of law.

/ / /

/ / /

COMPLAINT FOR PATENT INFRINGEMENT ETC.

**Cease and Desist Demands Have Gone Unheeded**

84.     The defendants have each received a cease and desist request from counsel for the plaintiffs, advising the defendants that all intellectual property rights to the MAT® treatment are held by the plaintiff and that, should the defendants open a clinic and begin to use the MAT® treatment, it would be infringing the Patents and intellectual property rights of the plaintiffs. However, upon information and belief, the defendants have recently each opened a clinic as described hereinabove and have infringed and continue to infringe the Patents and plaintiffs' intellectual property rights by the operation of those clinics.

## FIRST CLAIM FOR RELIEF

### Patent Infringement (35 U.S.C. §271(a), (b))
### As to All Defendants

85.     Plaintiffs reallege, as if fully set forth herein, the allegations contained in paragraphs 1 through 84.

86.     Upon information and belief, in the defendants' operation of the California clinics located in Roseville, Hayward, Newport Beach, and Costa Mesa, and in the operation of the Texas clinic, the defendants have been and currently are infringing the Patents by using, marketing, selling, offering for sale the MAT® treatment and using said systems and methods described within the Patents for the purpose of improving hepatic glucose processing in patients who receive the treatment, as well as for treating complications associated with diabetes, including heart and cardiovascular disease, wound healing, kidney disease, eye disease and nerve disease.  The defendants' use of the claims in the Patents has been done without the authorization of plaintiff Dr. Aoki.

87.     Upon information and belief, the defendants have had actual and constructive knowledge of the Patents prior to opening the clinics at issue, including the knowledge that the Patents are in the name of Dr. Aoki and no license rights to those Patents have been nor will be conferred by Dr. Aoki to the defendants to use the systems and methods described in the Patents.

88.     Defendants, by and through their use of the Patents as identified hereinabove, have, and continue to, either: a) directly infringe the Patents of Dr. Aoki in the operation of the

24

defendants' clinics; and/or b) indirectly infringe the Patents of Dr. Aoki by inducing, causing, or materially contributing to the infringing conduct of others with knowledge and/or willful blindness of the infringing activity.

89.     Upon information and belief, plaintiffs further allege that the defendants' infringement of the Patents has been intentional and willful, has caused and will continue to cause damage to plaintiffs, and is causing irreparable harm to plaintiffs for which there is no adequate remedy at law.

90.     Pursuant to 35 U.S.C. §284, the plaintiffs are entitled to recover from defendants the damages they have sustained and will sustain, and any gains, profits and advantages obtained by the defendants as a result of their acts of infringement alleged above, together with interest and costs as fixed by the court.  At present, the amount of such damages, gains, profits and advantages cannot be fully ascertained.

91.     Pursuant to 35 U.S.C. §284, the willfulness of the defendants' blatant infringement upon the plaintiffs' exclusive rights to the Patents entitles the plaintiffs to an increase in damages up to three times the amount found.  Furthermore, plaintiffs assert that this is an "exceptional" case, especially given the outrageous conduct of defendant Gilbert in light of his position as the former counsel, officer and director of the plaintiffs, such that the plaintiffs are entitled to an award of attorneys' fees pursuant to 35 U.S.C. §285.

92.     Pursuant to 35 U.S.C. §283, the plaintiffs are entitled to injunctive relief against the defendants -- unless defendants are restrained by this Court from continuing their unauthorized use of the Patents, the injuries to the plaintiffs and to the general public will continue.  The consequence of continued infringement by these defendants could very well result in either severe injury or death of a patient(s) due to the inexperience and lack of adequate training of the defendants and their agents, employees, and all persons acting in concert with them.  Any severe injury or death caused by the defendants' infringement could have a serious detrimental impact upon the plaintiffs' ability to continue clinical trials and development of the treatment.

93.     For the safety of the general public, and to avoid detrimental and irreparable loss

1   of value and goodwill in the MAT® treatment, the plaintiffs are entitled to an injunction

2   restraining defendants, their agents and employees, and all persons acting in concert with them,

3   from providing the MAT® treatment in violation of 35 U.S.C. §271.  Furthermore, defendants

4   Gilbert, Bionica, CATC, and any other defendant who has falsely asserted license rights to the

5   Patents,  must be restrained and permanently enjoined from representing to the public and third

6   parties that the defendant(s) holds any right, title or interest in the Patents, and be ordered to

7   disclose this fact to persons and entities with whom the defendant(s) are associated and acting in

8   concert with respect to other clinics not included within this litigation, including, but not limited

9   to, those clinics offering MAT® treatment in Miami, Florida, Shreveport, Louisiana, and Hong

10  Kong.

11         WHEREFORE, Plaintiffs pray for judgment against all defendants, and each of them, as

12  hereinafter set forth below.

### SECOND CLAIM FOR RELIEF

**Copyright Infringement (17 USC §106 et seq.)**
**As to All Defendants**

16         94.    Plaintiffs reallege, as if fully set forth herein, the allegations contained in

17  paragraphs 1 through 84.

18         95.    In or about 1990, Dr. Aoki and G. Steven Hammond, MD, PhD, jointly authored

19  an article entitled "Measurement of Health Status in Diabetic Patients – Diabetes Impact

20  Measurement Scales" which was peer reviewed and published in the periodical *Diabetes Care* in

21  April 1992.  The article was initiated by Dr. Aoki because he needed a quality of life instrument

22  to be used with MAT® treatment.  The two authors worked jointly to design a questionnaire to

23  measure a diabetic's quality of life using Dr. Hammond's expertise as a psychologist and

24  endocrinologist and Dr. Aoki's expertise as a nationally recognized diabetes specialist.  The

25  "DIMS" questionnaire was thereafter used in a clinical, correlative study of diabetic patients to

26  examine the psychometric properties of the questionnaire to ensure that it had internal

27  consistency and test-retest reliability and, therefore, determined to be a valid instrument to

28  measure health status in adult Type I and Type II diabetic patients. The article discussed the

study and the results thereof, including how the questionnaire is to be used and analyzed, and the appendix at the end of the article set forth the DIMS questionnaire itself.  The purpose of using the DIMS questionnaire with MAT® treatment is to measure the longitudinal changes in diabetic patients to quantitate treatment benefit in clinical trials.  The first page of the article specifically stated that reprint requests were to be made to Dr. Aoki.

96.     Furthermore, in or about March of 2002, Dr. Aoki created a detailed PowerPoint presentation in order to better educate physicians and potential investors on the benefits of MAT® treatment (the "MAT® Presentation").  The MAT® Presentation sets forth, *inter alia*, MAT's history, clinical information from diabetes studies, and photos of the effects of MAT treatments on some patients.  The diagrams in the MAT® Presentation were created by Dr. Aoki and the patient photos were taken by him.  Dr. Aoki drafted much of the text included in the presentation and, for the text not authored by him, was solely responsible for its selection and arrangement.

97.     In or about May 2002, and in order for defendant Gilbert to familiarize himself better with the MAT® procedure, Gilbert was provided with a copy of the MAT® Presentation by Dr. Aoki.  At the time the MAT® Presentation was provided to Gilbert, Dr. Aoki specifically told him that the MAT® Presentation was solely for Gilbert's personal educational use and was not to be distributed or disclosed to anyone else.

98.     On or about August 23, 2011, Dr. Aoki's counsel filed an application with the U.S. Copyright Office to register Dr. Aoki's copyright rights in the MAT® Presentation.  A true and correct copy of the application and receipt of filing is attached hereto as Exhibit A.

99.     On or about October 13, 2011, Dr. Aoki's counsel filed an application with the U.S. Copyright Office to register Dr. Aoki's copyright rights in the DIMS article and questionnaire.  A true and correct copy of the application and receipt of filing is attached hereto as Exhibit B.

100.    Plaintiffs have recently discovered that a PowerPoint presentation on "Cellular Activation Therapy" (the "CAT Presentation") – one of the defendants' various names for MAT® treatment -- was posted in full on these websites: www.americandiabetestherapy.com,

1  www.americandiabetestherapycenters.com  and on www.diabeticinnovations.com, and in part on

2  www.stopdiabetesmd.com.  Where the CAT Presentation appears in full, identified on the first

3  page of the document are the names of defendants Bionica and www.diabetes.net (aka defendant

4  Gilbert) asserting ownership of the material.  More specifically, included on the CAT

5  Presentation is the statement "Copyright Bionica Inc. All rights reserved.  Confidential; no

6  disclosure without permission of Bionica, Inc."

7      101.   The CAT Presentation reproduces a number of elements from Dr. Aoki's MAT®

8  Presentation including some diagrams, Dr. Aoki's patient photos, several charts, and text.  On

9  information and belief, defendant Gilbert/CATC/Bionica created an unauthorized derivative

10  work of the MAT® Presentation, resulting in the CAT Presentation, which was then distributed

11  to the other defendants herein.  The distribution of the MAT® Presentation was without Dr.

12  Aoki's authorization.

13      102.   Upon information and belief, the defendants are reproducing, distributing and

14  using the DIMS questionnaire in the operation of the California clinics located in Roseville,

15  Hayward, Newport Beach, and Costa Mesa, and in the operation of the Texas clinic.  The

16  reproduction and distribution of the DIMS questionnaire has been done without the authorization

17  of plaintiff Dr. Aoki, nor with the authorization and permission of Dr. Hammond.

18      103.   Defendants, by and through their use of plaintiff Dr. Aoki's copyrighted works as

19  identified hereinabove, have either a) directly infringed the plaintiff's exclusive rights under the

20  Copyright Act; b) contributorily infringed the plaintiff's exclusive rights under the Copyright Act

21  by inducing, causing or materially contributing to the infringing conduct of others with

22  knowledge of the infringing activity; and/or c) vicariously infringed the plaintiff's exclusive

23  rights under the Copyright Act by enjoying a direct financial benefit from another's infringing

24  activity.

25      104.   As a proximate cause of the defendants' infringing activities, plaintiff and the

26  general public, has and will suffer irreparable injury.

27      WHEREFORE, Plaintiffs pray for judgment against defendants, and each of them, as

28  hereinafter set forth below.

# THIRD CLAIM FOR RELIEF

### Trade Secret Misappropriation (Cal. Civil Code §§3426 *et seq.*)
### As to All Defendants

105.   Plaintiffs reallege, as if fully set forth herein, the allegations contained in paragraphs 1 through 84.

106.   As set forth above, defendant Gilbert was the attorney for the plaintiffs and an officer/director of plaintiff ADRI prior to late 2002/early 2003, when the relationship was permanently terminated.   As a result of such relationships, and while in a position of responsibility, trust, and confidence, defendant Gilbert became intimately familiar with plaintiffs' operations and was granted access to and gained knowledge of numerous trade secrets and confidential and proprietary information that are the property of plaintiffs, including, but not limited to, the following:

  a.   Information associated with the actual administration of MAT® treatment on patients for optimal effect – information which has been acknowledged by the defendants to have required years of experimentation by the plaintiffs in order to determine how to give the MAT® treatment in the optimal way;

  b.   Details and information regarding the changes experienced by patients who have received the MAT® treatment at the plaintiffs' clinics;

  c.   Information regarding how to best reduce consequences and side effects when treating patients with MAT®;

  d.   Information regarding which patients are best suited for receiving the MAT® treatment; and

  e.   Information regarding training of physicians and medical personnel to be supervised by physicians in the proper application of MAT® treatment.

107.   As set forth above, in the course of its business, plaintiffs developed and have maintained proprietary, confidential business information with respect to the MAT® treatment. This information has been developed over a substantial period of time, required substantial money and effort to compile, is unavailable to the public or to plaintiffs' competitors, and would

1   be of great value to plaintiffs' competitors.  Plaintiffs' trade secret information has been the

2   subject of reasonable efforts to maintain its confidentiality, including restricting access to the

3   information only to those who must use it to perform their jobs for plaintiffs or who are under an

4   obligation to maintain the confidentiality thereof.

5     108. As an attorney, officer and director for plaintiffs, defendant Gilbert was entrusted

6   with access to and protection of the trade secrets described above.  In addition, defendant Kunz

7   was provided with limited access to some of the trade secret information regarding training of

8   personnel, and was entrusted to maintain its confidential nature.  Plaintiffs are informed and

9   believe, and thereon allege, that, defendant Gilbert and defendant Kunz have provided the

10  plaintiffs' trade secret information to all remaining defendants in order to assist them in opening

11  and operating clinics in which the plaintiffs' MAT® treatment is used on patients from the

12  general public.

13    109. Defendants, and each of them, knew or had reason to know that such information

14  received from Gilbert and/or Kunz, was the trade secret, confidential and proprietary information

15  of the plaintiffs in that the information had independent economic value from the disclosure or

16  use of the information, and that plaintiffs made or took reasonable efforts to ensure the secrecy

17  of this information.

18    110. Defendants improperly misappropriated the above-identified trade secret

19  information from the plaintiffs without the express or implied consent from plaintiffs and

20  through deceit and misrepresentation and tortious conduct.  Defendants knew or had reason to

21  know that defendants Gilbert's and Kunz's knowledge of the plaintiffs' trade secret information

22  was originally acquired under circumstances giving rise to a duty to maintain its secrecy.

23    111. As a direct and proximate consequence of the acts and practices of defendants,

24  defendants have caused, are causing and, unless such acts and practices are enjoined by the

25  Court, will continue to cause irreparable harm to plaintiffs and the general public for which there

26  is no adequate remedy at law.  Therefore, plaintiffs seek the award of a preliminary and

27  permanent injunction against the defendants, pursuant to California Civil Code §3426.2,

28  prohibiting any and all further use of the trade secrets at issue, requiring the return of any and all

COMPLAINT FOR PATENT INFRINGEMENT ETC.

1   materials misappropriated from plaintiffs relating to the trade secrets, and to stop all activities

2   arising from the defendants' misappropriation of plaintiffs' trade secrets.

3       112.   As a further direct and proximate result of defendants' misappropriation, the

4   defendants have been unjustly enriched in an amount according to proof.

5       113.   Defendants' misappropriation of plaintiffs' trade secret and proprietary

6   information was willful, intentional, and malicious, entitling plaintiffs to an award of punitive

7   and exemplary damages in an amount not exceeding twice the damages awarded by the court

8   pursuant to California Civil Code §3426.3(c), and to an award of attorneys' fees pursuant to

9   California Civil Code §3426.4.

10      WHEREFORE, Plaintiffs pray for judgment against defendants, and each of them, as

11  hereinafter set forth below.

## FOURTH CLAIM FOR RELIEF

### False and Misleading Advertising
### (Lanham Act – 15 USC §1125(a)(1))
### As to All Defendants

15      114.   Plaintiffs reallege, as if fully set forth herein, the allegations contained in

16  paragraphs 1 through 84.

17      115.   Upon information and belief, the defendants have attempted to suppress

18  competition from the plaintiffs, and to cause risk and harm to the general public, by making false

19  and misleading statements regarding the treatment being offered by the defendants at their

20  respective clinics and matters associated therewith.  The nature of the false and misleading

21  claims which have been made, and which continue to be made, by the defendants, either orally,

22  electronically, and/or in writing, include, but are not limited to, the following types of statements

23  and assertions:

24          a.   the efficacy of the treatment offered by the defendants (e.g. stating that it

25              stops and/or reverses all complications of diabetes in virtually all sufferers)

26              and alleged absence of adverse side effects;

27          b.   that the defendants have been integrally involved in the development of the

28              Patents and treatment, including claims that defendant Gilbert is the sole

1      individual responsible for the treatment under the Patents and for the

2      development of the Bionica pump (both of which are wholly false);

3  c.  defendants' have the right(s) to use the Patents and/or have ownership thereof;

4  d.  the efficacy of the treatment with respect to Type 2 diabetes patients when no

5      peer reviewed data has been provided to support this application;

6  e.  that the Bionica pump: i) is the only infusion device which can be used for the

7      MAT® treatment; ii) is an integral part of the patented treatment; iii) is itself

8      protected by a patent; and/or iv) has never failed.

9  f.  that defendants have treated more than 100,000 patients;

10 g.  that defendants have been performing the treatment under the Patents for more

11     than 20 years;

12 h.  that Medicare and private insurance cover the treatment and will reimburse

13     the patients, including false statements such as "In every legal challenge of

14     insurance reimbursement for [the treatment], the patients have won and the

15     insurers have paid."

16 i.  that the treatment has been deemed medically necessary (and not

17     experimental) and is therefore covered by private insurance and Medicare;

18 j.  that the defendants promise to enforce the patients' rights if either private

19     insurance or Medicare refuse to pay for the defendants' services;

20 k.  the scope of physician participation and supervision required for safe

21     implementation of the treatment under the Patents;

22 l.  the experience, background and qualifications of defendants, including, but

23     not limited to, exaggerated claims in an effort to generate a level of legitimacy

24     not warranted by the facts;

25 m.  using testimonials provided to the plaintiffs by the plaintiffs' own patients in a

26     misleading way that suggests that the patients were treated by the defendants;

27 n.  changing, deleting and/or adding language to research articles and/or

28     publications to present a false and misleading impression of the efficacy of the

treatment being offered by the defendants;

    o.  accusing the plaintiffs of not sharing the technology under the Patents and thereby depriving "many who have suffered and died" because the plaintiffs were just "awaiting the right time to maximize [the treatment's] economic potential," referring to the plaintiffs' alleged "indifference" to suffering while in the pursuit of money to be tantamount to a "non statutory crime."

    p.  that the defendants' purported Artificial Pancreas Treatment is an "FDA approved" Artificial Pancreas System that has been in continuous use for 22 years, whereas the treatment does not fit within the FDA definition of an "Artificial Pancreas System" and has not been in continuous use for 22 years by the plaintiffs.

116. The above-referenced statements are material in that they influence or are likely to influence a patient's decision to pursue treatment; however, the misrepresentations are either blatantly false or clearly misleading. These misrepresentations have caused or are likely to cause confusion, mistake, physical harm and financial damage to patients who seek the treatment from defendants.

117. The misrepresentations are made over the internet, as well as using other means, in the defendants' efforts to market their infringing treatment in interstate commerce.

118. The defendants have publicized such false and misleading descriptions and representations in violation of the Lanham Act §43(a), 15 U.S.C. §1125(a). On information and belief, the defendants' aforesaid acts are deliberate and willful.

119. Unlike the defendants, the plaintiffs make every effort to provide accurate information and full disclosure to their patients in order to acquire the necessary informed consent for treatment. Plaintiffs have suffered and, absent judicial relief, will continue to suffer competitive harm and injury has a result of the defendants' false and misleading advertising. Furthermore, the defendants false and misleading statements bring disrepute to the treatment insofar as it does not and cannot live up to the false promises being made by the defendants in an effort to lure patients into their clinics for treatment.

1    120.    Defendants' conduct alleged herein is irreparably damaging to plaintiffs and to

2    the general public, and will continue to so damage plaintiffs and the public until restrained by

3    this Court and, therefore, both the plaintiffs and the public are without an adequate remedy at

4    law.

5    121.    Plaintiffs are entitled, pursuant to 15 U.S.C. §§1117 and 1125(a), to recover their

6    reasonable attorneys' fees and litigation expenses incurred in connection with remedying the

7    defendants' false and misleading statements and representations.

8    WHEREFORE, Plaintiffs pray for judgment against defendants, and each of them, as

9    hereinafter set forth below.

10    ## FIFTH CLAIM FOR RELIEF

11    **False and Misleading Advertising**
**(Cal. Business & Professions Code §17500)**
12    **As to All Defendants**

13    122.    Plaintiffs reallege, as if fully set forth herein, the allegations contained in

14    paragraphs 1 through 84, and 115 through 120.

15    123.    Upon information and belief, the defendants have attempted to suppress

16    competition from the plaintiffs, and to cause risk and harm to the general public, by making false

17    and misleading statements regarding the treatment being offered by the defendants at their

18    respective clinics and matters associated therewith.  The nature of the false and misleading

19    claims which have been made, and which continue to be made, by the defendants, either orally,

20    electronically, and/or in writing, include, but are not limited to, those types of statements and

21    assertions identified in paragraph 115.

22    124.    The above-referenced statements are material in that they influence or are likely

23    to influence a patient's decision to pursue treatment; however, the misrepresentations are either

24    blatantly false or clearly misleading.  These misrepresentations have caused or are likely to cause

25    confusion, mistake, physical harm and financial damage to patients who seek the treatment from

26    defendants.

27    125.    The defendants have publicized such false and misleading descriptions and

28    representations in violation of California Business and Professions Code §§17500, 17505,

1    17508(a), and 17533.6.  Upon information and belief, the defendants' aforesaid acts are

2    deliberate and willful.

3        126.    Unlike the defendants, the plaintiffs make every effort to provide accurate

4    information and full disclosure to their patients in order to acquire the necessary informed

5    consent for treatment.  Plaintiffs have suffered and, absent judicial relief, will continue to suffer

6    competitive harm and injury has a result of the defendants' false and misleading advertising.

7    Furthermore, the defendants false and misleading statements bring disrepute to the treatment

8    insofar as it does not and cannot live up to the false promises being made by the defendants in an

9    effort to lure patients into their clinics for treatment.

10       127.    Defendants' conduct alleged herein is irreparably damaging to plaintiffs and to

11   the general public, and will continue to so damage plaintiffs and the public until restrained and

12   enjoined by this Court pursuant to California Business and Professions Code § 17535, and,

13   therefore, both the plaintiffs and the public are without an adequate remedy at law.

14       128.    Plaintiffs are entitled, pursuant to California Business and Professions Code

15   §17535, to restitution or disgorgement, to the extent and in an amount to be proven at trial on this

16   matter.

17       WHEREFORE, Plaintiffs pray for judgment against defendants, and each of them, as

18   hereinafter set forth below.

### SIXTH CLAIM FOR RELIEF

**Breach of Fiduciary Duty**
**As to Defendant Gilbert**

22       129.    Plaintiffs reallege, as if fully set forth herein, the allegations contained in

23   paragraphs 1 through 128.

24       130.    By reason of the attorney-client relationship that defendant Gilbert had with both

25   plaintiffs, as well as by reason of the officer/director relationship Gilbert had with ADRI,

26   defendant Gilbert owed a fiduciary duty to the plaintiffs that existed during the relationship with

27   plaintiffs and continued thereafter up through the present time.

28       131.    Defendant Gilbert has intentionally, willfully, fraudulently and in conscious

disregard of his fiduciary duties to the plaintiffs by engaging in the acts alleged in this complaint. Such acts include, but are not limited to, the following: (a) competing with the plaintiffs; (b) infringing the Patents; (c) infringing Dr. Aoki's copyrights; (d) misappropriating trade secrets; (e) engaging in false and misleading advertising to gain a competitive advantage over the plaintiffs; (f) sharing confidential business information with the other defendants in order to gain a competitive advantage over the plaintiffs; (g) operating unlicensed clinics in competition with the plaintiffs; (h) falsely accusing the plaintiffs of being more interested in money than patients; (i) encouraging and inducing others to take credit for the investment of time and money made by the plaintiffs with respect to the MAT® treatment; and (j) violating California Business and Professions Code §17200 et seq. and the California Rules of Professional Conduct setting forth a lawyer's duties and obligations to his clients both during and after termination of that relationship.

132.    As a direct and proximate result of said breaches of fiduciary duty which have occurred with respect to the conduct alleged in this complaint, the plaintiffs have sustained damages, the full nature and extent of which are presently unknown to the plaintiffs but which are subject to proof at trial.

133.    Plaintiffs are informed and believe, and on that basis allege, that the wrongful conduct by defendant Gilbert was done with the intent to injure the plaintiffs and their business. Plaintiffs are further informed and believe, and on that basis allege, that said despicable acts were done maliciously, oppressively and with a wanton disregard of plaintiffs' rights.  Plaintiffs are therefore entitled to exemplary and punitive damages against defendant Gilbert

134.    The threatened ongoing wrongful conduct of defendant Gilbert, unless and until enjoined and restrained by order of this Court, will cause great and irreparable injury to the plaintiffs,  Plaintiffs have no adequate remedy at law for the injuries threatened and suffered as a result of defendant Gilbert's ongoing violation of his fiduciary duties to the plaintiffs in that it will be impossible for plaintiffs to determine the precise amount of damage that they will suffer if the conduct of defendant Gilbert is not restrained, and the plaintiffs will be forced to institute a multiplicity of suits to obtain adequate compensation for their injuries.

1    WHEREFORE, Plaintiffs pray for judgment against defendant Gilbert as hereinafter set

2    forth below.

### SEVENTH CLAIM FOR RELIEF

**Breach of Confidential Relationship
As to Defendant Gilbert**

6    135.    Plaintiffs reallege, as if fully set forth herein, the allegations contained in

7    paragraphs 1 through 134.

8    136.    That during the period in which defendant Gilbert was acting as attorney for

9    plaintiffs, as well as an officer and director for plaintiff ADRI, defendant Gilbert came into

10   possession of plaintiffs' confidential and novel information relating to their operation of a clinic

11   treating patients with MAT® treatment.  Defendant Gilbert knew that this confidential

12   information was being disclosed to him in confidence and not for public disclosure.

13   137.    Upon information and belief, beginning in or about 2010 and continuing to the

14   present time, defendant Gilbert disclosed said confidential and novel information to all other

15   defendants identified in this case as well as to individuals associated with clinics offering the

16   MAT® treatment in Hong Kong, Miami, Florida, and Shreveport, Louisiana.

17   138.    Said acts of defendant Gilbert constitute breach of a confidential relationship

18   between the plaintiffs and defendant Gilbert and a violation of Gilbert's duty of maintaining the

19   confidential information of his clients pursuant to California Rules of Professional Conduct, Rule

20   3-100(A).

21   139.    By reason of defendant Gilbert's acts alleged herein, plaintiffs have and will

22   suffer damage to their business, reputation and good will and defendant Gilbert has been and will

23   continue to be unjustly enriched.

24   140.    Defendant Gilbert acted willfully, with malice, oppression, fraud and/or in

25   conscious disregard of the rights of the plaintiffs and, therefore, should be subject to punitive

26   damages and attorneys' fees..

27   141.    Defendant Gilbert has and will continue to engage in such acts complained of

28   herein unless restrained and enjoined from doing so, causing irreparable damage and harm to the

COMPLAINT FOR PATENT INFRINGEMENT ETC.

1  plaintiffs and to the general public who is targeted by these clinics.  It would be difficult to

2  ascertain the amount of compensation which could afford the plaintiffs adequate relief for such

3  continuing acts, and a multiplicity of judicial proceedings would be required.  Plaintiffs' remedy

4  at law is not adequate to compensate it for injuries threatened.

5      WHEREFORE, Plaintiffs pray for judgment against defendant Gilbert as hereinafter set

6  forth below.

7  ### EIGHTH CLAIM FOR RELIEF

8  **Unfair Competition (Lanham Act 15 USC §1125(a))**
   **As to All Defendants**

9

10  142.    Plaintiffs reallege, as if fully set forth herein, the allegations contained in

11  paragraphs 1 through 141.

12  143.    The defendants conduct as set forth above, including (a) infringing the Patents of

13  Dr. Aoki; (b) infringing Dr. Aoki's copyrights; (c) trade secret misappropriation; (d) false and

14  misleading advertising; (e) defendant Gilbert's breach of fiduciary duties and confidential

15  relationship with the plaintiffs, all constitute unfair competition in violation of 15 U.S.C.

16  §1125(a).

17  144.    Upon information and belief, the defendants have engaged in the following

18  additional unlawful, unfair and/or fraudulent business practices, all in violation of 15 U.S.C.

19  §1125(a):

20      a.  Operating unlicensed clinics in violation of California Health and Safety Code

21          §1205;

22      b.  Changing the language in published articles authored by others from questions

23          or speculation regarding the benefit  of the MAT® treatment to definitive,

24          positive statements regarding the benefits of the treatment;

25      c.  Submitting a patent application to the U.S.P.T.O. which claimed and

26          described embodiments found in Dr. Aoki's previously issued patents and

27          publications, and asserting inventorship of technology developed by Dr. Aoki

28          (defendants McCarthy and Rose);

      d.  Plagiarizing scientific articles without giving proper credit to the author's thereof;

      e.  Deliberately removing Dr. Aoki's name as the inventor of MAT® and with respect to scientific research performed by Dr. Aoki at ADRI, all in an effort to discredit the plaintiffs and provide unwarranted credibility to the defendants;

      f.  Failing and refusing to advise patients that the Centers for MediCare and MediCaid Services issued a National Coverage Decision in 2009 denying payment for MAT® treatment and all other treatments in the category called outpatient intravenous insulin therapy (OIVIT).

145.   As a direct and proximate result of defendants' willful and wrongful acts, defendants have unjustly profited such that the plaintiffs are entitled to recover all of said profits acquired by defendants from their multiple acts of unfair competition in violation of 15 U.S.C. §1125(a).

146.   Upon information and belief, plaintiffs allege that the defendants acted willfully, with malice, oppression, fraud and/or in conscious disregard of the rights of the plaintiffs and, therefore, should be subject to treble damages pursuant to 15 U.S.C. §1117(a).

147.   As a further proximate cause of defendants' willful and wrongful acts set forth above, the plaintiffs have suffered and will continue to suffer substantial harm which is impossible to determine, including irreparable injury to their business reputation and goodwill. As such, a remedy a law is inadequate to compensate for the injuries inflicted by the defendants. Accordingly, plaintiffs are entitled to have this Court issue an order enjoining the defendants from any further such acts during the course of the litigation and on a permanent basis thereafter.

WHEREFORE, Plaintiffs pray for judgment against defendants, and each of them, as hereinafter set forth below.

/ / /

/ / /

/ / /

# NINTH CLAIM FOR RELIEF

### Unfair Competition and Unfair Business Practices
### (Cal. Business & Professions Code §17200)
### As to All Defendants

148.    Plaintiffs reallege, as if fully set forth herein, the allegations contained in paragraphs 1 through 147.

149.    The defendants conduct as set forth above, including (a) infringing the Patents of Dr. Aoki; (b) infringing Dr. Aoki's copyrights; (c) trade secret misappropriation; (d) false and misleading advertising; (e) defendant Gilbert's breach of fiduciary duties and confidential relationship with the plaintiffs, including his breach of California Business and Professions Code §6068, all constitute unfair competition in violation of California Business and Professions Code §17200 et seq..

150.    Upon information and belief, the defendants have engaged in additional unlawful, unfair and/or fraudulent business practices, all in violation of California Business and Professions Code §17200 et seq., as set forth above in paragraph 144.

151.    As a direct and proximate result of defendants' willful and wrongful acts, defendants have unjustly profited such that the plaintiffs are entitled to recover all of said profits acquired by defendants from their multiple acts of unfair competition in violation of California Business and Professions Code §17200 et seq..

152.    As a further proximate cause of defendants' willful and wrongful acts set forth above, the plaintiffs have suffered and will continue to suffer substantial harm which is impossible to determine, including irreparable injury to their business reputation and goodwill. As such, a remedy a law is inadequate to compensate for the injuries inflicted by the defendants. Accordingly, plaintiffs are entitled to have this Court issue an order enjoining the defendants from any further such acts during the course of the litigation and on a permanent basis thereafter.

WHEREFORE, Plaintiffs pray for judgment against defendants, and each of them, as hereinafter set forth below.

/ / /

/ / /

# PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests judgment as follows:

1.  That defendants pay compensatory damages to the plaintiffs according to proof;

2.  That, pursuant to 35 U.S.C. §284, plaintiffs recover any gains, profits and advantages obtained by the defendants as a result of their acts of infringement;

3.  That, pursuant to 35 U.S.C. §284, the plaintiffs are entitled to an increase in damages up to three times the amount found;

4.  That defendants, including their officers, agents, servants employees, and attorneys, and all persons in active concert or participation with any of them, be enjoined from further infringing the Patents pursuant to 35 U.S.C. § 283 and plaintiff Dr. Aoki's copyrights pursuant to 17 U.S.C. §502.  Furthermore, that defendants Gilbert, Bionica, CATC, and any other defendant who has falsely asserted license rights to the Patents, be restrained and permanently enjoined from representing to the public and third parties that the defendant(s) holds any right, title or interest in the Patents, and be ordered to disclose this fact to persons and entities with whom the defendant(s) are associated and acting in concert with respect to other clinics not included within this litigation, including, but not limited to, those clinics offering MAT® treatment in Miami, Florida, Shreveport, Louisiana, and Hong Kong;

5.  That defendants, including their officers, agents, servants employees, and attorneys, and all persons in active concert or participation with any of them, be enjoined from any and all further use of the plaintiffs' trade secrets, requiring the return of any and all materials misappropriated from plaintiffs related to the trade secrets, and to stop all activities arising from the defendants' misappropriation of plaintiffs' trade secrets pursuant to California Civil Code §3426.2;

6.  That defendants be ordered to disgorge and pay to the plaintiffs all unjust enrichment received as a result of defendants' misappropriation of plaintiffs' trade secrets and acts of unfair competition, in an amount according to proof;

COMPLAINT FOR PATENT INFRINGEMENT ETC.

7.    That defendants be ordered to pay to plaintiffs an award of punitive and exemplary damages for their willful, intentional, and malicious conduct in misappropriating the plaintiffs' trade secrets, in an amount not exceeding twice the damages awarded by the court pursuant to California Civil Code §3426.3(c);

8.    That defendant Gilbert be enjoined from disclosing the plaintiffs' confidential and novel information, acquired by means of his confidential and fiduciary relationship with the plaintiffs, to any other person or entity anywhere worldwide, and to destroy any such information which remains in his possession;

9.    That this Court award punitive damages against defendant Gilbert for his deliberate and willful breach of fiduciary duties and confidential relationships with the plaintiffs;

10.    That this Court award punitive damages against the defendants for their deliberate and willful acts of unfair competition;

11.    That defendants be required to pay plaintiffs' reasonable attorneys' fees as provided by 35 U.S.C. §285, 17 U.S.C. §505, California Civil Code §3426.4, 15 U.S.C. §1117(a), and/or any other basis provided for under federal or California law;

12.    That defendants be required to pay prejudgment interest and plaintiffs' costs associated with this action; and

13.    All such other relief that the Court deems just and proper in this action.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury of any issues triable of right by jury.

DATED:  October 24, 2011          LAW OFFICES OF JOANNA R. MENDOZA, PC


_____
JOANNA R. MENDOZA
Attorney for Plaintiffs

.

COMPLAINT FOR PATENT INFRINGEMENT ETC.