UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| THOMAS T. AOKI, M.D., an individual, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>GREGORY FORD GILBERT, an individual; BIONICA, INC., a Nevada corporation; et al.,<br><br>    Defendants. | No. 2:11-cv-02797-MCE-CKD<br><br><br><br>**MEMORANDUM AND ORDER** |

Through the present action, Plaintiffs Thomas Aoki, M.D. ("Aoki"), and Aoki Diabetes Research Institute ("ADRI") (collectively, "Plaintiffs") allege a variety of causes of action arising around the development, patenting, and licensing of therapies intended for the treatment of diabetes. Pending before the Court is Plaintiffs' Motion to Disqualify Defendant Gregory Gilbert ("Gilbert") and affiliated counsel James L. Brunello ("Brunello") as counsel for several of Gilbert's co-Defendants.
///

1

For the following reasons, Plaintiffs' Motion is DENIED without prejudice.[1]

## BACKGROUND[2]

**A.   Plaintiffs' version of the facts.[3]**

Aoki, a physician licensed to practice in California, founded ADRI in 1986 to further his research efforts into the areas of diabetes and metabolism.  ADRI also provides some clinical care using an intravenous insulin therapy called metabolic activation therapy or MAT® treatment.  Aoki is the sole inventor and developer of, and has received a patent for, that treatment.

During development of the therapy and thereafter Aoki and ADRI also developed trade secret know-how related to the use and application of that technology.  In addition, Aoki developed additional treatment-related methods and systems for which he obtained further patents (collectively, all above patents are referred to as "the Patents").  Aoki purportedly licensed use of the Patents to ADRI.

---

[1]   Because oral argument will not be of material assistance, the Court ordered this matter submitted on the briefing.  E.D. Cal. R. 230(g).

[2]   The parties' underlying dispute, and the current Motion, arise out of a business relationship between Aoki and Gilbert that dates back to the mid-1980s.  Given the long history of the parties' relationship, and the lack of clarity as to exactly what has evolved over the years, the Court recites only the bare minimum facts here.

[3] Unless otherwise stated, these facts are taken, sometimes verbatim, from Plaintiffs' Complaint.

1    According to Aoki, at some point he retained Gilbert, a
2 California attorney, to act as his personal counsel.  At the same
3 time, Gilbert became engaged in business transactions with Aoki
4 and set up legal entities, including ADRI, to exploit Aoki's
5 technology.  Gilbert acted as counsel for those legal entities as
6 well.  In fact, Gilbert purportedly drafted nearly every legal
7 document for both the entities and for Aoki and provided legal
8 advice to Plaintiffs over the course of many years, until their
9 relationship dissolved in late 2002 or early 2003.
10    After Plaintiffs' relationship with Gilbert ended, Gilbert
11 allegedly proceeded to falsely assert that he, or entities with
12 which he is affiliated, holds all right, title and interest in
13 the MAT® treatment.  More specifically, Gilbert purportedly acted
14 in concert with the remaining Defendants to set up clinics where
15 the MAT® treatment is now offered.  Gilbert also allegedly made
16 false and misleading statements to patients or would-be patients
17 regarding the status and efficacy of the MAT® treatment as well
18 as regarding available payment options.
19    Plaintiffs thus filed this action bringing claims against
20 all Defendants for patent infringement, copyright infringement,
21 trade secret misappropriation, false and misleading advertising,
22 and unfair competition.  In addition, Plaintiffs allege breach of
23 fiduciary duty and breach of confidential relationship claims
24 against Defendant Gilbert alone.
25 ///
26 ///
27 ///
28 ///

3

When Gilbert responded to the Complaint[4] on behalf of himself and several of his co-Defendants, Plaintiffs filed their instant Motion seeking to disqualify him from appearing in this case.[5] According to Plaintiffs, disqualification is warranted given "Gilbert's nearly 20-year history as the personal attorney for Dr. Aoki and general counsel for ADRI, during which he involved himself in nearly every aspect of the business which is the subject and foundation of this lawsuit." Motion, 1:9-12.

In support of their Motion, Plaintiffs submitted a 2003 email, purportedly drafted by Gilbert, indicating he believed Aoki had "personally been [his] client for many, many years."[6] Declaration of Thomas T. Aoki, M.D. ("Aoki Decl."), ¶ 2, Exh. A. Plaintiffs also provided a declaration, signed under oath in 2004, in which Aoki claimed that:

---

[4] Defendants filed several Motions to Dismiss and a Motion for More Definite Statement (ECF Nos. 7-10). Per its December 29, 2011, Memorandum and Order, the Court vacated the hearing on those motions pending resolution of Plaintiffs' current Motion. For clarity of the Court's docket, those Motions are now DENIED without prejudice to being re-filed and re-noticed for hearing on the Court's regular civil calendar.

[5] Gilbert represents two groups of Defendants. First Gilbert, along with the firm of Cella Lange & Cella LLP, represents himself and the "Bionica Defendants," which are comprised of Bionica Inc., Bionica Int'l, LLC, Trina Health, LLC, and Trina Health of Newport Beach, LLC. In addition, along with Brunello, Gilbert represents Defendants Kevin J. Buckman, MD, Marc R. Rose, MD, Michael R. McCarthy, Melanie J. Kunz, NP, MedEdCo, LLC, and Diabetic Innovations, LLC. On its face, Plaintiffs' current Motion targets Gilbert's representation of the second group of Defendants only. However, by way of their requested relief, Plaintiffs really seek to prevent Gilbert from acting as counsel for any party. See Motion, 9:14-18.

[6] The Court is aware that Defendants object to Plaintiffs' evidence on a variety of grounds. See ECF No. 46. Given the Court's rejection of Plaintiffs' Motion, however, Defendants' objections are now overruled as moot.

4

1    Gilbert served as [his] personal legal counsel,
     assisting [him] in various ways, including review of
2    legal documents, drafting and preparation of legal
     documents, legal advice, and representing [him] in
3    various disputes with other person(s) and entity(ies).

4    Gilbert represented [Aoki] in a dispute with a
     Dr. Joseph Silva and another matter involving the
5    Department of Internal Medicine.

6    Gilbert prepared and filed incorporation documents for
     [ADRI], and also became legal counsel for ADRI.
7
     Gilbert provided similar legal services to ADRI, as he
8    had done for [Aoki], reviewing of legal documents,
     preparation of necessary legal documents, and provision
9    of legal advice when applicable.

10   On behalf of ADRI, Gilbert prepared the legal document
     for transferring of the MAT license from American
11   Hospital Supply to ADRI.

12   Id., ¶ 3, Exh. B.

13       Finally, Plaintiffs submitted a partial transcript of

14   Gilbert's testimony from a June 2004 evidentiary hearing before a

15   Nevada state court. Id., ¶ 4, Exh. C. Pursuant to that

16   transcript Gilbert indicated that he "represented Dr. Aoki in

17   reference to the University of California Davis" and that he had

18   "worked on every patent [Aoki's] ever had." Id. Gilbert also

19   noted, however, that he worked in conjunction "with [Aoki's]

20   counsel" on patents as well. Id.

21       In addition, Gilbert stated in his testimony that he handled

22   ADRI's "equipment and law and contracts, and all commercial

23   activity, running the company, hiring the people." Id. Gilbert

24   also admitted that he prepared ADRI's initial documents, budgets

25   and operating plan. Id. Essentially, Gilbert testified that he

26   "did everything on the non-clinical side" of ADRI. Id. Based on

27   these facts, Plaintiffs believe disqualification is mandated

28   here.

5

**B.   Gilbert's version of the facts.[7]**

According to Gilbert, he has been involved in the development of diabetes technologies for more than twenty-five years, ever since his daughter was diagnosed with Type 1 diabetes at age 2. At that time, Gilbert was a practicing lawyer and the Chief Executive Officer ("CEO") of an international innovative pump manufacturing company. After his daughter's diagnosis, Gilbert began work on designing an insulin pump for use in the treatment of diabetes. Due to his increasing diabetes-related work, Gilbert eventually met Aoki, and the two thereafter partnered together to develop and commercialize a new approach to the treatment of diabetes using Aoki's technology and Gilbert's pumps.

Gilbert formed ADRI in approximately 1986 or 1987 and thereafter served as its Executive Director. After realizing that fund-raising presented an issue for a non-profit entity, Gilbert formed a "for profit" company, AMSys, to raise additional funds. According to Gilbert, at AMSys' formation, Aoki licensed his technology to that new entity. In the meantime, Gilbert continued working on pumps through his own affiliated entities, namely some of the Bionica Defendants. Subsequently, over the course of many years, Gilbert became the CEO of AMSys and he and Aoki reverse merged AMSys into a new company.

///

---

[7] Unless otherwise stated, these facts are derived, at times verbatim, from the Declaration of Gregory Ford Gilbert ("Gilbert Decl.").

1  Eventually, after that new company experienced difficulties,
2  Gilbert purchased the license himself via one of his other
3  entities.  All disputes between the parties were purportedly
4  eventually resolved by execution of a Settlement Agreement and
5  Release, which Gilbert argues operated to assign him the license
6  rights in the pertinent technology.
7      According to Gilbert, he did not represent Aoki with respect
8  to the matters at issue in this lawsuit, which are the various
9  licenses issued or transferred to him.  To the contrary, Gilbert
10 claims that in relation to each of these proceedings he
11 represented himself and his own companies.  Gilbert thus argues
12 Plaintiffs have shown no basis for disqualification.
13
14                            **STANDARD**
15
16     In deciding motions for disqualification, the court applies
17 the relevant state law.  In re County of Los Angeles, 223 F.3d
18 990, 995 (9th Cir. 2000); see also E.D. Cal. Local Rule 180(e)
19 (adopting California's standards of professional conduct).  The
20 applicable standards of professional responsibility are found in
21 the Rules of Professional Conduct of the State Bar of California,
22 which provide, in pertinent part:
23     A member shall not, without the informed written
        consent of the client or former client, accept
24      employment adverse to the client or former client
        where, by reason of the representation of the client or
25      former client, the member has obtained confidential
        information material to the employment.
26
27 Cal. Rules Professional Conduct, Rule 3-310(E).
28 ///

7

1    Pursuant to that rule, "[w]here an attorney successively
2 represents clients with adverse interests, and where the subjects
3 of the two representations are substantially related, the need to
4 protect the first client's confidential information requires that
5 the attorney be disqualified from the second representation."
6 People ex rel. Dept. of Corporations v. SpeeDee Oil Change
7 Systems, Inc., 20 Cal. 4th 1135, 1146 (1999).  In this context,
8 the governing test requires that the "[former] client demonstrate
9 a 'substantial relationship' between the subjects of the
10 antecedent and current representations."  Flatt v. Superior
11 Court, 9 Cal. 4th 275, 283 (1994).
12    In applying the "substantial relationship" test, "courts
13 focus less on the meaning of the words substantial and
14 relationship and look instead at the practical consequences of
15 the attorney's representation of the former client."  H.F.
16 Ahmanson & Co. v. Salomon Brothers, Inc., 229 Cal. App. 3d 1445,
17 1454 (1991).  "The courts ask whether confidential information
18 material to the current dispute would normally have been imparted
19 to the attorney by virtue of the nature of the former
20 representation."  Id.  To this extent, courts should "focus on
21 the similarities between the two factual situations, the legal
22 questions posed, and the nature and extent of the attorney's
23 involvement with the cases."  Id. at 1455 (internal citations and
24 quotations omitted).  "As part of its review, the court should
25 examine the time spent by the attorney on the earlier cases, the
26 type of work performed, and the attorney's possible exposure to
27 formulation of policy or strategy."  Id.
28 ///

8

Throughout its analysis, the Court should nonetheless remain cognizant that "[a] motion to disqualify counsel is a drastic measure which courts should hesitate to impose except when of absolute necessity." <u>Travelers Casualty and Surety Company of America v. Claude E. Atkins Enterprises, Inc.</u>, 2006 WL 3589746, *4 (E.D. Cal.). "A disqualification motion is often tactically motivated and tends to derail efficient progress of litigation." <u>Id.</u> Accordingly, "[t]he party seeking disqualification has a heavy burden and must satisfy a high standard of proof." <u>Id.</u> Ultimately, "[d]isqualification motions are subject to strict judicial scrutiny given the potential for abuse." <u>Id.</u>

## ANALYSIS

Plaintiffs seek to disqualify Gilbert and related counsel Brunello due to "Gilbert's nearly 20-year history as the personal attorney for Dr. Aoki and general counsel for ADRI." Motion, 1:9-11. Plaintiffs' Motion fails for several reasons.

First, the only evidence Plaintiffs have produced to demonstrate the existence of a 20-year attorney client relationship is an almost decade-old e-mail, a declaration submitted by Aoki in a Nevada state court proceeding and excerpts of testimony Gilbert gave in another state court proceeding. Most of the statements included within these documents consist of legal conclusions, and they all suffer from a variety of additional flaws as well, not the least of which is that they are aged, lack foundation, are taken out of context and are comprised primarily of hearsay. In sum, Plaintiffs' evidence is weak, at best.

1      Moreover, evidentiary shortcomings aside, while it is clear
2 that Gilbert did represent ADRI and Aoki each in some capacity at
3 some time, there is nothing before the Court to indicate Gilbert
4 represented Plaintiffs with respect to matters having a
5 substantial relationship to the current dispute.  In fact, the
6 only statements that potentially give the Court any pause in this
7 regard are those pertaining to Gilbert's work on the Patents.
8 That being said, it remains unclear exactly what Gilbert's role
9 was in prosecuting those Patents.  Indeed, while Gilbert does not
10 appear to deny he did patent work for Aoki, it appears to the
11 Court that Gilbert may have been doing so on his own behalf, or
12 on behalf of the other companies of which he was a principal, in
13 furtherance of a joint venture, in which case Plaintiffs'
14 confidential communications with counsel would not necessarily be
15 protected. See Cal. Evid. Code 962 ("Where two or more clients
16 have retained or consulted a lawyer upon a matter of common
17 interest, none of them...may claim a privilege under this article
18 as to a communication made in the course of that relationship
19 when such communication is offered in a civil proceeding between
20 one of such clients...and another of such clients.").
21      Finally, even if the Court had been provided concrete
22 evidence that Gilbert represented Plaintiffs alone regarding the
23 prosecution of those Patents, it does not appear to this Court
24 that any such prosecution will be at issue in this litigation.
25 There is no indication in the record that Defendants intend to
26 challenge the validity of the Patents or Aoki's development of
27 the underlying technology.
28 ///

10

1  Instead, the issues that will be litigated here arose much later
2  and involve the validity of subsequent agreements and licenses
3  purportedly transferring the rights to the Patents to third
4  parties and then to Gilbert.  No facts before the Court indicate
5  that Gilbert represented either Plaintiff (especially outside of
6  some sort of joint representation) with respect to these
7  subsequent transactions.
8       Ultimately, the weak record before the Court, coupled with
9  the lengthy and contentious history among the parties, leaves the
10 Court with no immediate way to parse out the facts.  The Court is
11 simply not willing to take such a drastic step as to disqualify
12 counsel without a much more solid showing that counsel previously
13 acted as Plaintiffs' attorney and that the course of that former
14 representation is substantially related to the current
15 litigation.  Stated another way, Plaintiffs are obligated to <u>show</u>
16 that a substantial relationship between any former and current
17 representation exists, but at present, they have failed to do so.
18 Instead, Plaintiffs are asking that the Court speculate as to,
19 rather than find, the facts. Accordingly, Plaintiffs' Motion is
20 now DENIED without prejudice.
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

11

**CONCLUSION**

For the reasons just stated, Plaintiffs' Motion to Disqualify Attorneys (ECF No. 41) is DENIED without prejudice. In addition, for clarity of the Court's docket, the various pending Motions to Dismiss and the Motion for More Definite Statement originally filed in December of 2011 (ECF Nos. 7-10) are DENIED without prejudice as well.  Not later than five (5) days following the date this Memorandum and Order is electronically filed, Defendants shall either re-notice those dispositive motions on the Court's regular civil calendar or otherwise respond to Plaintiffs' Complaint.

IT IS SO ORDERED.

Dated: June 26, 2012

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE