1
2
3
4
5
6
7
8                       UNITED STATES DISTRICT COURT

9                       EASTERN DISTRICT OF CALIFORNIA

10

11   THOMAS T. AOKI, M.D., et al.,              No.  2:11-cv-02797-TLN-CKD

12           Plaintiffs,

13       v.                                     **MEMORANDUM AND ORDER**

14   GREGORY FORD GILBERT, et al.,

15           Defendants.

16

17          This matter is before the Court on a Motion to Dismiss, or in the Alternative, Motion for

18   Summary Judgment brought by Defendants Gregory Gilbert ("Gilbert"), Bionica, Inc.

19   ("Bionica"), Bionica Int'l, LLC, Trina Health, LLC, and Trina Health of Newport Beach, LLC

20   (collectively "Moving Defendants").  (ECF No. 138.)  Plaintiffs Thomas Aoki ("Aoki") and Aoki

21   Diabetes Research Institute ("ADRI") (collectively "Plaintiffs") filed an Opposition to the Motion

22   (ECF. No. 151), and Moving Defendants filed a reply (ECF No. 160).  The Court has carefully

23   reviewed Moving Defendants' motion, Plaintiffs' opposition, and all the supporting materials

24   submitted by the parties.  For the reasons set forth below, Moving Defendants' Motion to

25   Dismiss, or in the Alternative, Motion for Summary Judgment is GRANTED in part and

26   DENIED in part.[1]

27   _____

28   [1] The Court ordered this matter submitted on the briefs.  *See* L. R. 230(g).

                                              1

**BACKGROUND**[2]

A.     **Plaintiffs' Version of the Facts**

Plaintiff Thomas Aoki is a physician who invented, developed, and patented an intravenous insulin therapy known as the metabolic activation therapy "MAT."  In 1989, Aoki received a patent for the original MAT treatment, hereinafter referred to as the 810 Patent.  (First Am. Compl., ECF No. 135 at ¶ 41.)  The MAT treatment is intended to be administered and supervised by physicians who receive specialized training from ADRI.  (ECF No. 135 at ¶ 43.)  Subsequent to his work on the 810 Patent, Aoki began developing methods and systems which, using a similar form of pulsatile intravenous insulin, were designed in a manner to treat major diseases suffered by both diabetic and non-diabetic patients.  (ECF No. 135 at ¶ 44.)  Generally speaking, these additional patents cover the following methods of: (1) treating heart disease and cardiovascular disease; (2) treating wounds, promoting healing, and preventing amputations; (3) treating kidney diseases; (4) treating eye and nerve diseases; and (5) improving hepatic glucose processing.  (ECF No. 135 at ¶ 45.)

Plaintiff ADRI is a non-profit medical research corporation founded in 1986 by Aoki to further research efforts into diabetes and metabolism.  ADRI also provides clinical care for patients with metabolic disorders using the MAT treatment.  (ECF No. 135 at ¶ 40.)  ADRI has a license to use, practice, and otherwise perform the MAT technology contained within the patents.  (ECF No. 135 at ¶¶ 47–48.)

According to Aoki, at some point he retained Gilbert, a California attorney, to act as his personal counsel.[3]  At the same time, Gilbert became engaged in business transactions with Aoki and set up legal entities, including ADRI, to exploit Aoki's technology.  Gilbert also would

---

[2] The parties' underlying dispute and the current motion arise out of a business relationship between Aoki and Gilbert that dates back to the mid-1980s.  Given the long history of the parties' relationship, and the lack of clarity as to exactly what has evolved over the years, the Court recites only the bare minimum facts herein.

[3] Plaintiffs brought a motion to disqualify Gilbert and affiliated counsel James L. Brunello.  (ECF Nos. 16, 41.)  The Court denied the motion without prejudice finding Plaintiffs failed to show that the course of former representation is substantially related to the current litigation.  (Mem. & Order, ECF No. 67.)

1   appoint himself as a director and officer of those entities and act as counsel.  During the period in

2   which Gilbert acted as legal counsel to Plaintiffs, as well as within his role as an officer and

3   director of ADRI, he acquired a significant amount of confidential information.  (ECF No. 135 at

4   ¶ 51.)   Gilbert purportedly drafted nearly every legal document for both the entities and for Aoki

5   and provided legal advice to Plaintiffs over the course of many years, until their relationship

6   dissolved in late 2002 or early 2003.  (ECF No. 135 at ¶ 49.)

7          After Plaintiffs' relationship with Gilbert ended, Gilbert allegedly proceeded to falsely

8   assert that he, or entities with which he is affiliated, held all right, title and interest in the MAT

9   treatment.  More specifically, Gilbert purportedly acted in concert with the remaining Defendants

10  to set up clinics where the MAT treatment is now offered.  Gilbert also allegedly made false and

11  misleading statements to patients or would-be patients regarding the status and efficacy of the

12  MAT treatment as well as regarding available payment options.  (ECF No. 135 ¶¶ 52, 59, 94–95.)

13  **B.       Gilbert's Version of the Facts**

14         According to Gilbert, he has been involved in the development of diabetes technologies

15  for more than twenty-seven years, ever since his daughter was diagnosed with Type 1 diabetes at

16  age 2.  At that time, Gilbert was a practicing lawyer and the Chief Executive Officer of an

17  international innovative pump manufacturing company.  After his daughter's diagnosis, Gilbert

18  began work on designing an insulin pump for use in the treatment of diabetes.  Due to his

19  increasing diabetes-related work, Gilbert eventually met Aoki, and the two thereafter partnered

20  together to develop and commercialize a new approach to the treatment of diabetes using Aoki's

21  technology and Gilbert's pumps.  (Gilbert Decl., ECF No. 141 at 2.)[4]

22         Gilbert formed ADRI in approximately 1986 or 1987 and thereafter served as its

23  Executive Director.  After realizing that fund-raising presented an issue for a non-profit entity,

24  Gilbert formed a "for profit" company, AMSys, to raise additional funds.  According to Gilbert,

25  at AMSys's formation, Aoki licensed his technology to that new entity in 1987 (hereinafter the

26  _____

27  [4] Plaintiffs object to portions of Gilbert's declaration on various grounds but does not object to
    the paragraph as cited above.  (Pls.' Objs. Gilbert Decl., ECF No. 157.)  Therefore, because the
    Court does not rely on the portions of the declaration to which Plaintiffs object, it need not
28  resolve Plaintiffs' objections.

1  "AMSys License").  In 1992 and 1999, through a series of transfers and stock purchases, a

2  different company, AMTech, became the owner of the license to use the MAT technology and

3  another company, Diabetex International Inc. ("Diabetex"), became its sole shareholder.  Gilbert

4  alleges he became the owner of the AMSys License through a 2001 settlement agreement in

5  which AMTech and Diabetex conveyed all of their respective rights and interests in the license to

6  him.  (Defs.' Mem. Mot. to Dismiss, ECF No. 139 at 3–5.)

7        Furthermore, on or about January 31, 1992, AMSys entered into a development agreement

8  with Connecticut Innovations Incorporated ("CII"), by which CII provided a development

9  funding loan to AMSys.  In exchange AMSys gave CII a non-exclusive license of the MAT

10 technology as security in the event of default.  After AMSys's default on the loan, CII became the

11 owner of the license.  Bionica then purchased the CII license in 2005 (hereinafter referred to as

12 the "CII license").

13 **C.**     **Nevada Action**[5]

14       In March 2005, Aoki and a company who is not a party to this litigation, Metabolic

15 Industries ("MI"), filed a cross-claim in Nevada state court case *Metabolic Industries, v Aoki*, No.

16 CV03-04790.  Aoki and Metabolic Industries named Gilbert and Bionica as defendants in the

17 Nevada Action alleging several claims sounding in tort and contract; Aoki and MI's seventeenth

18 claim sought relief for misappropriation of trade secrets by Gilbert.  (ECF No. 141, Ex. H at ¶¶

19 148–152.)

20 **D.**     **Procedural Posture**

21       Plaintiffs brought this action on October 24, 2011.  (Compl., ECF No. 1.)  The operative

22 complaint asserts nine claims for relief: (1) patent infringement, (2) copyright infringement, (3)

23 trade secret misappropriation, (4) false and misleading advertising under the Lanham Act, 15

24  

---

25 [5] The Court takes judicial notice of the cross-complaint from the case *Metabolic Industries, v Aoki*, No. CV03-04790, Second Judicial District Court of the State of Nevada, County of Washoe

26 ("Nevada Action"), attached to the Declaration of Gregory Gilbert as Exhibit H.  (*See* ECF No. 141.)  Although the Court takes judicial notice of the publicly-filed court document, it does not

27 opine on the truth of the allegations in the cross-complaint.  *Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001) (holding that judicial notice of matters of public record is proper but not for the

28 truth of the facts recited therein).

U.S.C. § 1125(a)(1), (5) false and misleading advertising under California Business and Professions Code § 17500, (6) breach of fiduciary duty, (7) breach of confidential relationship, (8) unfair competition under the Lanham Act, 15 U.S.C. § 1125 (a), and (9) unfair competition under California Business and Professions Code § 17200.  (ECF No. 135.)  Plaintiffs name over a dozen defendants and allege all claims except the sixth and seventh claims against all defendants. Plaintiffs allege the sixth and seventh claims against Gilbert only.

The parties have made several pre-answer motions including:

- Defendant Kunz and MedEdCo LLC's motion to dismiss for lack of personal jurisdiction (ECF Nos. 6, 9, 72);

- Defendant Diabetic Innovations, LLC's motion to dismiss for lack of personal jurisdiction (ECF Nos. 7, 73 );

- Defendants' motion to dismiss, in the alternative, motion for summary judgment, in the alternative, motion for more definite statement (ECF Nos. 10, 68);

- Plaintiffs' motion to disqualify attorneys Gilbert and Brunello (ECF Nos. 16);

- Defendants Mugg, Tang, Health Innovations, LP, ACSRC, LLC motion to compel arbitration and stay proceedings pending arbitration (ECF Nos. 54, 91); and

- Defendant Diabetic Life Pulse of Louisiana, LLC's motion to dismiss for lack of personal jurisdiction (ECF No. 112).

By this motion, Gilbert argues that he and Bionica own the exclusive rights for the MAT treatment using technology.  (ECF No. 139 at 5–6.)  Therefore, because he and Bionica have the right to use the MAT technology and to sublicense that right, Plaintiffs' claims against Defendants should be dismissed.  Moving Defendants also argue Plaintiffs are barred from bringing their claims by their failure to seek rescission or reformation of the agreements that purportedly give Gilbert and Bionica licenses to use the MAT technology (i.e., the 2001 settlement agreement and CII license).  Moving Defendants further argue that the applicable statute of limitations for each claim for relief has expired.  Finally, Moving Defendants assert that certain claims brought by Plaintiffs are preempted by the California Uniform Trade Secrets Act.

**LEGAL STANDARD**

A.     **Motion to Dismiss**

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).  Rule 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* (internal citations and quotations omitted).  A court is not required to accept as true a "legal conclusion couched as a factual allegation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).  "Factual allegations must be enough to raise a right to relief above the speculative level[.]"  *Twombly*, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief."  *Twombly*, 550 U.S. at 556 n.3 (internal citations and quotations omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."  *Id.* (citing 5 Wright & Miller, *supra*, at § 1202).  A pleading must contain "only enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.  If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."  *Id.*  However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"  *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

1    "A motion to dismiss made under Federal Rule of Civil Procedure 12(b)(6) must be

2    treated as a motion for summary judgment under Federal Rule of Civil Procedure 56 if either

3    party to the motion to dismiss submits materials outside the pleadings in support or opposition to

4    the motion, and if the district court relies on those materials." *Anderson v. Angelone*, 86 F.3d

5    932, 934 (9th Cir. 1996).

6            **B.     Motion for Summary Judgment**

7            Summary judgment is appropriate when the moving party demonstrates no genuine issue

8    as to any material fact exists, and that the moving party is entitled to judgment as a matter of law.

9    Fed. R. Civ. P. 56.  Under summary judgment practice, the moving party always bears the initial

10   responsibility of identifying those portions of "the materials in the record, including depositions,

11   documents, electronically stored information, affidavits or declarations, stipulations[,] . . .

12   admissions, interrogatory answers, or other materials" which it believes demonstrate the absence

13   of a genuine issue of material fact.  Fed. R. Civ. P. 56(c)(1)(A); *see also Celotex Corp. v. Catrett*,

14   477 U.S. 317, 323 (1986).  If the moving party meets its initial responsibility, the burden then

15   shifts to the opposing party to establish that a genuine issue as to any material fact actually does

16   exist.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986).  The

17   opposing party must demonstrate that the fact in contention is material, i.e., a fact that might

18   affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

19   242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury

20   could return a verdict for the nonmoving party.  *Id.* at 251–52.

21           In the endeavor to establish the existence of a factual dispute, the opposing party need not

22   establish a material issue of fact conclusively in its favor.  *Id.* at 248–49 (citing *First Nat'l Bank

23   of Ariz. v. Cities Service Co.*, 391 U.S. 253, 288–89 (1968)).  It is sufficient that "the claimed

24   factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the

25   truth at trial."  *First Nat'l Bank*, 391 U.S. at 289.  Thus, the "purpose of summary judgment is to

26   'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

27   trial.'"  *Matsushita*, 475 U.S. at 587 (quoting Rule 56(e) Advisory Committee's note to 1963

28   amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Neilsen Freight Lines*, 602 F. Supp. 1224, 1244–45, 1249 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

Rule 56 also allows a court to grant summary adjudication on part of a claim or defense. *See* Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying . . . the part of each claim or defense [] on which summary judgment is sought.").

## ANALYSIS

### A.    Threshold Issues

**1.    Judge England's Previous Order Adjudicating Defendants' Motion to Dismiss, in the Alternative, Motion for Summary Judgment**

Before addressing the merits of Moving Defendants' motion, Plaintiffs argue that Defendants' motion to dismiss is procedurally improper because this Court, through the Honorable Judge England, already denied Plaintiffs' motion for summary judgment. Therefore, Plaintiffs contend, the motion to dismiss should be denied to maintain consistency with Judge England's March 28, 2013, order. (Pls.' Opp'n, ECF No. 151 at 14.) This position is untenable.

Judge England's order construed the first motion to dismiss as a motion for summary judgment because it included materials outside the pleadings. (Order, ECF No. 133 at 8 (citing *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996)); *see also* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

After construing the motion as a motion for summary judgment, Judge England then explicitly denied Defendants' motion for summary judgment without prejudice for failing to file a separate statement of undisputed facts in compliance with Local Rule 260. (ECF No. 133 at 8 ("Accordingly, Defendants' Motion for Summary Judgment is denied without prejudice."); ECF No. 133 at 10 ("Accordingly, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss, in

1   the Alternative Motion for Summary Judgment, in the Alternative Motion for a More Definite

2   Statement (ECF No. 68) is DENIED WITHOUT PREJUDICE.").)  Because Judge England's

3   ruling was explicit that the denial was without prejudice and because unlike the previous motion

4   to dismiss, Moving Defendants did file a separate statement of undisputed facts, it is not

5   inconsistent to examine the merits of the instant motion to dismiss.[6]

6           **2.      Federal Rule of Civil Procedure 12(g)**

7           Plaintiffs also argue that Moving Defendants' motion to dismiss violates Rule 12(g) which

8   prohibits multiple 12(b) motions when defenses were available when the earlier 12(b) motion was

9   made.  Defendants do not appear to address Plaintiffs' allegations with respect to Rule 12(g).  In

10  any event, the Federal Rules of Civil Procedure do not support Plaintiffs' position.

11          Generally speaking, if a party brings multiple motions to dismiss under Rule 12(b), that

12  party may not raise new grounds for dismissal that were previously omitted.  *See* Fed. R. Civ. P.

13  12(g)(2) ("Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule

14  must not make another motion under this rule raising a defense or objection that was available to

15  the party but omitted from its earlier motion."); Fed. R. Civ. P. 12(h)(2)–(3)("Failure to state a

16  claim upon which relief can be granted, to join a person required by Rule 19(b), or to state a legal

17  defense to a claim may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by

18  a motion under Rule 12(c); or (C) at trial.").  By contrast, in the alternative, Moving Defendants

19  style their motion as a motion for summary judgment.  Plaintiffs take umbrage that Defendants

20  are bringing a summary judgment motion under the guise of a motion to dismiss.  However,

21  Plaintiffs do not point to anything in Federal Rule of Civil Procedure 56 or Local Rules that

22  prohibit Moving Defendants' motion or that prohibit successive motions for summary judgment

23  that raise different defenses at this stage of the proceedings.  In fact the opposite appears to be

24  true.  Fed. R. Civ. P. 56(b) ("Unless a different time is set by local rule or the court orders

25  otherwise, a party may file a motion for summary judgment *at any time* until 30 days after the

26

27  ─────────────
    [6] Plaintiffs argue that some Defendants have not set forth any evidence in separate statement of
    undisputed facts that entitles them to summary judgment.  The Court addresses these arguments
28  *infra*.

1    close of all discovery.") (emphasis added).  So long as Moving Defendants' successive motions

2    are within the bounds of ethical conduct, the Court will not find that the motion to dismiss, in the

3    alternative, motion for summary judgment, is precluded as a matter of law.  *But cf. Aetna Life Ins.*

4    *Co. v. Alla Med. Servs., Inc.*, 855 F.2d 1470, 1476 (9th Cir. 1988) (noting that the "cumulative

5    effect of Defendants' litigation tactics could indicate the motion was filed for an improper

6    purpose").

7    **B.      Motion to Dismiss, in the Alternative, Motion for Summary Judgment**

8    **         Brought By Joining Defendants**

9            Plaintiffs argue that even if Moving Defendants were entitled to summary judgment on all

10   or part of their claims, the Joining Defendants are not.[7]  The Court finds that there is no evidence,

11   much less undisputed evidence, for it to determine whether the allegations against Joining

12   Defendants are entitled to summary judgment in their favor as a matter of law.  Again, Plaintiffs

13   note correctly that the undisputed statement of facts references only facts related to Gilbert and

14   Bionica, and therefore none of the Joining Defendants have presented any evidence in support of

15   the motion for summary judgment.  *See* Fed. R. Civ. P. 56(a) ("The court shall grant summary

16   judgment *if the movant shows* that there is no genuine dispute as to any material fact *and the*

17   *movant is entitled* to judgment as a matter of law . . . .") (emphasis added).  Moving Defendants

18   counter that the allegations against the Joining Defendants are derivative of the wrongdoing

19   alleged against Gilbert and Bionica.  However, the First Amended Complaint is replete with

20   allegations that all defendants, including the Joining Defendants, infringed on Plaintiffs' patents

21   and copyrights, misappropriated trade secrets, advertised falsely and competed unfairly by their

22   own conduct.[8]  (*See generally* ECF No. 135.)

23   _____

24   [7] Joining Defendants are Kevin Buckman, Marc Rose, Michael McCarthy, Diabetic Innovations, LLC, Diabetic Life Pulse of Louisiana, Life Pulse Health, LLC, John D. Mullen, Glenn A. Wilson, Richard L. Girard, David S. Bradley, Limi Management, Inc., Diabetic Life Pulse, Inc.,

25   Timothy Tight, and Fasing S. Chui (hereinafter referred to as "Joining Defendants").  (Joinder, ECF No. 143 ("[Defendants] [h]ereby [j]oin the pending MOTION TO DISMISS UNDER RULE

26   12(B)(6); IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT UNDER RULE

27   56, and adopt all of the Pleadings, Points and Authorities, Declarations, Statement of Undisputed Facts and Requests for Judicial Notice in support thereof as their own.").)

28   [8] Gilbert and Bionica allege that there is a common defense that encompasses the Joining

1    Therefore, this Court DENIES the motion to dismiss, in the alternative motion for

2    summary judgment, to the extent that it is brought on behalf of Joining Defendants.  The Court

3    does not preclude Joining Defendants from bringing later motion for summary judgment after the

4    factual record has developed.

5    **C.    Motion to Dismiss, in the Alternative, Motion for Summary Judgment**

6        **Brought by Defendants Bionica Int'l, Trina Health, LLC, and Trina Health of**

7        **Newport Beach, LLC**

8    Similar to the Joining Defendants, the Court finds that Moving Defendants Bionica Int'l,

9    Trina Health, LLC, and Trina Health of Newport Beach, LLC do not set forth any facts let alone

10   undisputed facts that would entitle them to judgment as a matter of law.  Again, Plaintiffs note

11   correctly that the undisputed statement of facts only references facts related to Gilbert and

12   Bionica, and therefore none of the other Moving Defendants have presented any evidence in

13   support of the motion for summary judgment.  *See* Fed. R. Civ. P. 56(a) ("The court shall grant

14   summary judgment *if the movant shows* that there is no genuine dispute as to any material fact

15   *and the movant is entitled* to judgment as a matter of law . . . .") (emphasis added).  Furthermore,

16   Moving Defendants' assertion that there is no independent wrong alleged against them is false.

17   The First Amended Complaint is replete with allegations that all defendants, including these

18   Moving Defendants, infringed on Plaintiffs' patents and copyrights, misappropriated trade

19   secrets, advertised falsely and competed unfairly by their conduct.  (*See generally* ECF No. 135.)

20   Therefore, this Court DENIES the motion to dismiss in the alternative motion for

21   summary judgment to the extent that it is brought on behalf of Moving Defendants Bionica Int'l,

22   Trina Health, LLC, and Trina Health of Newport Beach, LLC.  The Court does not preclude

23   Defendants from bringing a later motion for summary judgment after the factual record has

24   developed.

25

26   _____

27   Defendants i.e., all Defendants have licenses to use the MAT technology.  However, at this stage,
     the Court does not find that an alleged common defense insulates all of the parties.  A fact-finder
     could find that one or more of the purported licenses to Gilbert and Bionica are invalid, or that a

28   Joining Defendant is not liable even though Gilbert and/or Bionica are liable.

**D.    Gilbert's and Bionica's Arguments**

Having now distilled the issues in this motion to include Moving Defendants Gilbert and Bionica only, the Court addresses the substance of the motion, specifically the arguments that (1) Plaintiffs' claims are barred because Gilbert and Bionica have a license to use the MAT technology, (2) Plaintiffs' claims are barred by the applicable statutes of limitations, and (3) Plaintiffs' sixth, seventh and ninth claims for relief are preempted by the California Uniform Trade Secrets Act.

**1.    Gilbert and Bionica's Allegations They Have a License to Use The MAT Technology**

Gilbert and Bionica argue that by virtue of the 2001 settlement agreement and the CII license, they have the exclusive right to use the MAT technology.  (ECF No. 139 at 5–7.)  The Court finds, however, that there are triable issues of fact with respect to these contentions. Although Gilbert contends that he has a license, Plaintiffs offer the following issues of triable fact: (1) whether the 2001 settlement prohibits assignment of the AMSys License without  Aoki's consent, which he never provided; (2) whether Gilbert's argument is foreclosed by his contrary admissions in the Nevada Action; (3) whether the expiration of the AMSys License would have resulted in the full reversion of rights to Aoki under the 2001 settlement agreement; and (4) whether the AMSys License was limited to the only 810 Patent i.e., if the license includes the additional patents identified in the First Amended Complaint.  (*See* Pls.' Sep. Stmt., ECF No. 155.)

Additionally, the Court finds that there are triable issues of fact with respect to whether Bionica has a license to use the MAT technology pursuant to the CII License Agreement. Plaintiffs offer the following issues of triable fact: (1) whether there was an "Event of Default" a prerequisite to CII obtaining license rights; (2) whether Aoki terminated all of the license rights under the CII agreement; (3) whether Gilbert's and Bionica's arguments are foreclosed based on contrary arguments in the Nevada Action; and (4) whether the CII license was limited to the 810 Patent and whether it includes the additional patents identified in the First Amended Complaint.

1    (*See* ECF No. 155.)[9]

2           This finding is also consistent with Judge England's order adjudicating Defendants'

3    motion to compel arbitration.  (Order, ECF No. 132 at 14:19–20 ("Gilbert's declaration makes

4    clear that there are genuine issues of material fact regarding the [Licensing] Agreement and the

5    validity of sublicenses.").)

6           Gilbert and Bionica counter that the statute of limitations has run on Plaintiffs' right to

7    seek reformation or rescission of the 2001 settlement or CII license that purportedly grant them

8    the right to use the MAT technology.  (ECF No. 139 at 9.)  This argument is clever but does not

9    withstand closer scrutiny.  It may be true that the expiration of the statute of limitations for any

10   contractual claims prohibits Plaintiffs from seeking rescission or reformation, but Plaintiffs have

11   not brought such claims here.  The expiration of the statute of limitations on Plaintiffs'

12   contractual claims does not somehow insulate Gilbert and Bionica from other causes of action

13   like patent infringement and copyright infringement.  Nor do Gilbert and Bionica point to any

14   authority that compels the dismissal of Plaintiffs' non-contractual claims based on the expiration

15   of the rescission and reformation statutes of limitations.

16          In any event, as referenced above, the Court also finds that there are disputed issues of

17   fact with respect to the parties' interpretation of the agreements purportedly granting Gilbert and

18   Bionica a license to use the MAT technology.  For example, although Gilbert and Bionica allege

19   that they have a license to utilize the patents in this case, Plaintiffs argue that these arguments are

20   foreclosed by Gilbert's contrary assertions in the Nevada Action in which he asserted that a

21   different contract provided him the rights to use the MAT technology at issue.  Plaintiffs also

22   argue that the 2001 settlement agreement and the CII license addressed only the 810 Patent and

23   could not have provided rights to use the patents identified in the First Amended Complaint.

24   Therefore, Plaintiffs have presented triable issues of fact as to Gilbert and Bionica's defense that

25   they had permission to use the licenses at issue.

26

27   _____

28   [9] The Court finds Plaintiffs' analogy of the facts in this civil case to criminal assault and rape
     unnecessary, inapposite, and strident.  (*See* ECF No. 151 at 19.)

### 2.        Statutes of Limitations

Gilbert and Bionica also argue that the applicable statutes of limitations have expired for Plaintiffs' second through ninth claims for relief.  Summary judgment can be properly granted for a defendant on a statute of limitation defense when there is no disputed question of fact that a claim was untimely filed.  *See S.E.C. v. Seaboard Corp.*, 677 F.2d 1307–11 (9th Cir. 1982).  However, if there is a genuine issue of material fact, especially as to when the cause of action accrued, a motion for summary judgment on the basis of the statute of limitations should be denied.  *Id.*; *see also Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1268 (9th Cir. 1998) (reversing district court's dismissal of claims on statute of limitations grounds).

The California Supreme Court recently addressed the accrual, expiration, and equitable exceptions and modifications of statutes of limitations:

> The limitations period, the period in which a plaintiff must bring suit or be barred, runs from the moment a claim accrues. Traditionally at common law, a "cause of action accrues 'when [it] is complete with all of its elements'—those elements being wrongdoing, harm, and causation." This is the "last element" accrual rule: ordinarily, the statute of limitations runs from "the occurrence of the last element essential to the cause of action."
>
> To align the actual application of the limitations defense more closely with the policy goals animating it, the courts and the Legislature have over time developed a handful of equitable exceptions to and modifications of the usual rules governing limitations periods.  These doctrines may alter the rules governing either the initial accrual of a claim, the subsequent running of the limitations period, or both.  The "'most important'" of these doctrines, the discovery rule, where applicable, "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action."  Equitable tolling, in turn, may suspend or extend the statute of limitations when a plaintiff has reasonably and in good faith chosen to pursue one among several remedies and the statute of limitations' notice function has been served.  The doctrine of fraudulent concealment tolls the statute of limitations where a defendant, through deceptive conduct, has caused a claim to grow stale.  The continuing violation doctrine aggregates a series of wrongs or injuries for purposes of the statute of limitations, treating the limitations period as accruing for all of them upon commission or sufferance of the last of them.  Finally, under the theory of continuous accrual, a series of wrongs or injuries may be viewed as each triggering its own limitations period, such that a suit for relief may be partially time-barred as to older events but timely as to those within the applicable limitations period.

14

*Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185, 1191–92 (2013) (internal citations omitted).

      a.    <u>Plaintiffs' Sixth Claim for Relief for Breach of Fiduciary Duty, and</u>
<u>Seventh Claim for Relief for Breach of Confidential Relationship, Against</u>
<u>Defendant Gilbert</u>

Gilbert argues that Plaintiffs' sixth and seventh claims for relief for breach of fiduciary duty and breach of confidential relationship, alleged against him individually, are barred by the one-year statute of limitations relating to attorney malpractice actions pursuant to California Civil Procedure Code section 340.6(a).  (ECF No. 139 at 11 (citing Cal. Civ. Proc. Code § 340.6(a) ("An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first.").)

The California Code of Civil Procedure does not specify a statute of limitations for breach of fiduciary duty or breach of a confidential relationship.  Accordingly, the selection of the proper statute of limitations provision is determined by the "gravamen" of the plaintiff's complaint.  *Robuck v. Dean Witter & Co., Inc.*, 649 F.2d 641, 645 n. 2 (9th Cir. 1990); *Day v. Greene*, 59 Cal. 2d 404, 411 (1963) ("The statute of limitations to be applied is determined by the nature of the right sued upon, not by the form of the action or the relief demanded.").  Here, Gilbert and Bionica argue that the one-year statute of limitations for attorney malpractice (*see* Cal. Civ. Proc. Code section 340.6) applies to Plaintiffs' claim for breach of fiduciary duty because the fiduciary obligation arose from the attorney-client relationship.  The weight of California authority is in accord.  *Quintilliani v. Mannerino*, 62 Cal. App. 4th 54, 67–68 (1998) (holding that one-year statute of limitations set forth in section 340.6 applies to claims of breach of fiduciary duty when the fiduciary obligation arises from the attorney-client relationship); *Stoll v. Super. Ct.*, 9 Cal. App. 4th 1362, 1369 (1992) (same); *but compare David Welch Co. v. Erskine & Tulley*, 203 Cal. App. 3d 884, 893 (1988) ("where a cause of action is based on a defendant's breach of its

1   fiduciary duties, the four-year catchall statute set forth in Code of Civil Procedure section 343

2   applies").  Similarly, Gilbert and Bionica argue that a one-year statute of limitations applies to

3   Plaintiffs' breach of confidential relationship claim because the confidential relationship was the

4   attorney-client relationship.

5        However, Plaintiffs' First Amended Complaint alleges that Gilbert breached his fiduciary

6   duty and confidential relationship by virtue of both (1) his attorney-client relationship with Aoki

7   and ADRI and (2) his officer/director relationship with ADRI.  (ECF No. 135 at ¶¶ 143, 149.)  It

8   is not clear from the pleadings whether the gravamen of Plaintiffs' claims is based on a breach of

9   fiduciary duties as a director, officer, or attorney—all theories appear to be equally pled.  As

10  such, it is not clear whether the one-year statute of limitations applies or a longer one.  *See, e.g.,*

11  Cal. Civ. Code. Proc. § 338(d) (providing three-year statute of limitations applicable to fraud).

12       Even assuming that the shorter statute of limitations i.e., one year, applied to Plaintiffs'

13  claims, Gilbert has not shown that the claims would still be barred.  Plaintiffs allege that Gilbert

14  breached his fiduciary obligation and confidential relationship in 2010 and continuing into the

15  present.  (ECF No. 135 at ¶ 150.)  Because Plaintiffs filed their complaint in October 2011, this

16  would still cover conduct from October 2010 to the present.  Therefore, because Gilbert has the

17  burden on summary judgment to show no genuine issue of triable fact as to this issue, the motion

18  is DENIED with respect to Plaintiffs' Sixth and Seventh Claim for Relief.

19       b.     Plaintiffs' Second, Fourth, Fifth, Eighth, Ninth Claims for Relief Against

20              Defendants Gilbert and Bionica

21                        *i.     Applicable Statutes of Limitation*

22       Plaintiffs' second claim for relief for copyright infringement is subject to a three-year

23  statute of limitations.  17 U.S.C. § 507(b) (providing that copyright claims must be "commenced

24  within three years after the claim accrued").  A copyright cause of action accrues when the

25  copyright owner knew or should have known of the alleged infringement.  *Polar Bear*

26  *Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 706 (9th Cir. 2004).

27       Plaintiffs' fourth and eighth claims for relief allege false and misleading advertising and

28  unfair competition in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  The

1   Lanham Act does not provide a statute of limitations.  *See Jarrow Formulas, Inc. v. Nutrition*

2   *Now, Inc.*, 304 F.3d 829, 836 (9th Cir. 2002) (holding that the Lanham Act does not provide an

3   explicit statute of limitations); *Magic Kitchen LLC v. Good Things Int'l Ltd.*, 153 Cal. App. 4th

4   1144, 1156 (2007) ("Federal appellate authority [] is split as to whether a statute of limitations

5   applies to Lanham Act claims or whether, instead, laches is the only applicable timeliness

6   defense.").  Accordingly, the Ninth Circuit "presume[s] that Congress intended to 'borrow' the

7   limitations period from the most closely analogous action under state law."  *Jarrow*, 304 F.3d at

8   836.  Courts have found that the most closely analogous claim to a violation of section 43(a) of

9   the Lanham Act, 15 U.S.C. § 1125(a), is fraud.  *Id.* at 838–39 (holding California's three-year

10  statute of limitations for fraud claims also applied to false advertising claim under the Lanham

11  Act) (citing Cal. Civ. Proc. Code § 338(d) (providing three-year statute of limitations for action

12  for relief on the ground of fraud or mistake)); *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187,

13  191 (2d Cir. 1996) (applying New York's fraud statute of limitations to a claim under Lanham

14  Act).  Therefore, the Court finds that a three-year statute of limitations applies to Plaintiffs' fourth

15  and eighth claims for relief alleging false and misleading advertising and unfair competition in

16  violation of the Lanham Act.

17         Plaintiffs' fifth claim for relief is for false and misleading advertising under California

18  Business and Professions Code section 17500, which was either a three-year or four-year statute

19  of limitations.  *Harshbarger v. Philip Morris, Inc.*, No. 02-05267 JSW, 2003 WL 23342396, at *5

20  (N.D. Cal. Apr. 1, 2003) ("There is some dispute as to whether [a] four-year statute of limitations

21  [] applies to Section 17500 claims or if those claims are instead governed by California Code of

22  Civil Procedure Section 338(a), which sets forth a default three-year statute of limitations for

23  'liability created by a statute,' when the statute does not include a statute of limitations.");

24  *compare Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 534 (N.D. Cal. 2012) ("Claims

25  under the [California False Advertising Law] are governed by the three-year statute of limitations

26  set forth in California Code of Civil Procedure Section 338(a)."); *Esoimeme v. Wells Fargo Bank*,

27  No. CIV S-10-2259 JAM EFB PS, 2011 WL 3875881, at *8 (E.D. Cal. Sept. 1, 2011) ("Although

28  section 17500 does not itself contain its own limitations period, the statute of limitations on

17

1    claims that do not contain their own limitations period is three years."); *Brown v. Option One*

2    *Mortg. Corp.*, No. C 09-5705 MHP, 2010 WL 1267774, at *3 (N.D. Cal. Apr. 1, 2010) ("The

3    alleged violation of Business and Professions Code sections 17500 . . . has a three-year statute of

4    limitations when the violation is based on statutory violations."); *Yumul v. Smart Balance, Inc.*,

5    733 F. Supp. 2d 1117, 1130 (C.D. Cal. 2010) ("[False Advertising Law] claims are subject to a

6    three-year statute of limitations"); *Rodarte v. Philip Morris, Inc.*, No. CV03-0353FMC(CTX),

7    2003 WL 23341208, at *2 (C.D. Cal. June 23, 2003) ("Plaintiffs' claims for negligent and

8    intentional false and misleading advertising under California Business and Professions Code §§

9    17500, et seq. . . . are subject to a three-year statute of limitations."); *with Irving v. Lennar Corp.*,

10   No. 2:12-CV-0290 KJM EFB, 2013 WL 4900402 at *10 (E.D. Cal. Sept. 11, 2013) ("The statute

11   of limitations for actions under California Business and Professions Code §§ 17200 and 17500 is

12   four years."), *and CytoSport, Inc. v. Vital Pharm., Inc.*, 894 F. Supp. 2d 1285, 1294 (E.D. Cal.

13   2012) (finding that False Advertising Law and Unfair Competition claims have four-year statutes

14   of limitations).[10]

15          Plaintiffs' ninth claim for relief under California's Unfair Competition Law ("UCL") is

16   subject to a four-year statute of limitations.  Cal. Bus. & Prof. Code § 17208 ("Any action to

17   enforce any cause of action pursuant to this chapter shall be commenced within four years after

18   the cause of action accrued."); *Aryeh*, 55 Cal. 4th at 1196 (holding section 17208 provides for a

19   four-year limitations period applicable to UCL claims).

20                              *ii.    Analysis*

21          Gilbert and Bionica argue that the statute of limitations accrued as early as 2001 when

22   Aoki entered into the settlement agreement, and no later than 2003 (when the ADRI website

23   accused Gilbert of improperly selling licenses for the use of MAT) or March 2005 (when

24   _____

25   [10] Because violations of section 17500 are expressly included as violations of section 17200, the longer four-year limitations period for an action for remedies other than civil penalties in a false advertising matter may effectively be four years.  Antitrust and Unfair Competition Law Section,

26   The State Bar of Cal., Cal. Antitrust and Unfair Competition Law, Revised Edition § 17.07[A] (Cheryl Lee Johnson ed., Matthew Bender & Co. 2012).  The Court need not decide at this time

27   whether the statute of limitations is three years or four because, as set forth *infra*, Plaintiffs allege

28   conduct within both statutes of limitations thereby precluding summary judgment on this claim.

1    Plaintiffs alleged many of the same claims in this action in the Nevada Action).  (ECF No. 139 at

2    6–7.)

3           Plaintiffs appear to concede that some conduct is barred pursuant to the three and four-

4    year statutes of limitations set forth above.  However, Plaintiffs allege that the "conduct at issue

5    has all occurred beginning as of July 2010 when the Roseville Clinic first opened" and that

6    "[e]very other known clinic that infringed the MAT® technology opened after July 2010."

7    Ostensibly, Plaintiffs are arguing that the theory of continuous accrual permits them to sue for "a

8    series of wrongs or injuries . . . such that a suit for relief may be partially time-barred as to older

9    events but timely as to those within the applicable limitations period."  *Aryeh*, 55 Cal. 4th at 1192.

10   The Court agrees with Plaintiffs that the conduct that occurred in July 2010 and thereafter would

11   be well within the applicable statute of limitations set forth above.  Moreover, Gilbert and Bionica

12   cannot show the absence of a triable issue of fact with respect to their statutes of limitations

13   defense for Plaintiffs' second, fourth, fifth, eighth and ninth claims for relief.  As such, summary

14   judgment is DENIED for these claims on the above grounds.

15                    c.    Plaintiffs' Third Claim for Relief for Trade Secret Misappropriation

16                          Against Gilbert and Bionica

17          The California Uniform Trade Secret Act ("CUTSA") provides that "[a]n action for

18   misappropriation must be brought within three years after the misappropriation is discovered or

19   by the exercise of reasonable diligence should have been discovered."  Cal. Civ. Code § 3426.6.

20   Contrary to many other claims' statute of limitations, for misappropriation of trade secrets under

21   the CUTSA "a continuing misappropriation constitutes a single claim."  *Id.*  The rationale is that

22   "once a plaintiff knows or should know that a particular defendant cannot be trusted with one

23   secret, it is unreasonable for that plaintiff simply to assume that that defendant can be trusted to

24   protect other secrets."  *Intermedics, Inc. v. Ventritex, Inc.*, 822 F. Supp. 634, 654 (N.D. Cal.

25   1993); *accord Glue–Fold, Inc. v. Slautterback Corp.*, 82 Cal. App. 4th 1018, 1027 (2000).

26          In this case, Plaintiff Aoki brought a cross-claim against Gilbert alleging misappropriation

27   of trade secrets in the Nevada Action.  (*See* ECF No. 141 at Ex. H at ¶¶ 148–152.)  Review of that

28   action shows that misappropriation of trade secrets was indeed a claim for relief asserted by Aoki

19

1    against Gilbert.  Plaintiffs do not dispute this fact; therefore, there is no genuine issue of fact that

2    Aoki was aware of Gilbert's misappropriation of trade secrets as of 2005.

3          Plaintiffs argue instead that the confidences misappropriated by Gilbert are different than

4    those previously misappropriated and sued upon in 2005.  (ECF No. 135 at 15; ECF No. 139 at

5    6.)  However, the law dictates that misappropriation of trade secrets be viewed as a single claim

6    regardless of any continuing misappropriation that may have occurred in July 2010 so long as the

7    claim stems from the same relationship.  *See Cypress Semiconductor Corp. v. Super. Ct.*, 163 Cal.

8    App. 4th 575, 583–84 (2008) ("Each new misuse or wrongful disclosure is viewed as augmenting

9    a single claim of continuing misappropriation rather than as giving rise to a separate claim.")

10   (internal quotations omitted) (quoting *Cadence Design Sys. Inc. v. Avant! Corp.*, 29 Cal. 4th 215,

11   223 (2002)).  Plaintiffs do not cite any authority to the contrary.  Therefore, the Court finds that

12   the alleged misappropriation of trade secrets in July 2010 stems from the same alleged

13   confidential relationship between Aoki and Gilbert that ended in late 2002/early 2003 and was at

14   issue in the Nevada Action.  Because the undisputed facts show that Aoki was aware of Gilbert's

15   alleged trade secret misappropriation at least as far back as 2005, Aoki's current trade secret

16   misappropriation claim against Defendant Gilbert is time-barred based on the three-year statute of

17   limitations for such claims.

18          Less clear is whether the following claims for misappropriation of trade secrets claims are

19   barred by the statute of limitations: (1) Aoki's claim against Bionica; (2) ADRI's claim against

20   Gilbert; and (3) ADRI's claim against Bionica.  Based on a review of the First Amended

21   Complaint and the cross-complaint in the Nevada action, it appears likely that these claims are

22   also barred.  Despite the Court's skepticism that these other claims for misappropriation of trade

23   secrets are timely, Gilbert and Bionica have failed to set forth evidence that the statute of

24   limitations bars the claims as a matter of law.  For example, it is not clear whether Bionica had

25   sufficient notice of the misappropriation claims given that it does not appear it was named as a

26   defendant in the cross-complaint in the misappropriation trade secrets claim for relief in the

27   Nevada Action (even though it was named as a defendant in other claims).  There is also no

28   evidence with respect to whether Aoki's knowledge that Gilbert was misappropriating trade

1  secrets can be imputed to ADRI.  Therefore, the Court does not have sufficient facts before it to

2  grant summary judgment on these claims at this early pleading stage.  *See Brocade*

3  *Communications Sys. Inc. v. A10 Networks, Inc.*, No. 10-CV-03428-LHK, 2011 WL 1044899, at

4  *4 (N.D. Cal. Mar. 23, 2011) ("It appears that the factual record must be developed before the

5  Court can determine whether [plaintiff's] claims are time-barred.").

6         As such, the Court GRANTS the motion IN PART.  Defendants' motion for summary

7  judgment on the third claim for relief based on statute of limitations is GRANTED as to Gilbert.

8  However, the Court DENIES the motion in so far as it seeks to dismiss (1) Aoki's

9  misappropriation of trade secrets claim against Bionica, (2) ADRI's misappropriation of trade

10  secrets claim against Gilbert, and (3) ADRI's misappropriation of trade secrets claim against

11  Bionica.  The Court does not preclude Defendants from raising further statute of limitations

12  defenses after the factual record has developed.

13         **3.       California Uniform Trade Secrets Act Preemption**

14         Finally, Gilbert and Bionica argue that the California Uniform Trade Secrets Act

15  ("CUTSA") precludes Plaintiffs' claims for sixth, seventh, and ninth claims for relief for breach

16  of fiduciary duty, breach of confidential relationship, and unfair competition, respectively.

17  Gilbert and Bionica correctly note that the CUTSA provides the exclusive civil remedy for

18  conduct falling within its terms, and supersedes other civil remedies based on misappropriation of

19  trade secrets.  *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th

20  939, 954 (2009).  Plaintiffs do not dispute that the CUTSA preempts any trade secret allegations;

21  rather Plaintiffs merely inform the Court that all of the claims at issue include additional

22  allegations besides trade secret misappropriation.  The Court therefore GRANTS the motion to

23  the extent that the sixth, seventh, and ninth claims for relief for breach of fiduciary duty, breach

24  of confidential relationship, and unfair competition, respectively, are based on any trade secret

25  misappropriation as preempted by CUTSA.  However, to the extent the claims rely upon conduct

26  falling outside of Plaintiffs' claims for misappropriation of trade secrets, those claims cannot be

27

28

1  precluded by the CUTSA.[11]

2  **E.**     **Defendants' Successive Pre-Answer Motions**

3           The Court acknowledges this litigation has been pending for two-and-a-half years with

4  several pre-answer motions filed and adjudicated with no answers filed by Defendants and

5  ostensibly no discovery yet exchanged.  The Court also notes that for several of the moving and

6  joining Defendants there were *no facts* proffered in the filed separate statement of undisputed

7  facts.  While the Court does not find the instant motion to dismiss, in the alternative, for summary

8  judgment, to be frivolous, the Court will evaluate further motions to determine whether

9  "successive motions and papers become so harassing and vexatious that they justify sanctions[.]."

10  *Aetna Life Ins. Co. v. Alla Medical Services, Inc.*, 855 F.2d 1470, 1476 (9th Cir. 1988); *see id.*

11  (affirming imposition of sanctions against defendants who brought successive motions to dismiss

12  in bad faith).

13                                                  **CONCLUSION**

14           Therefore, it is HEREBY ORDERED AND ADJUDGED that Defendants' Motion to

15  Dismiss, in the Alternative Motion for Summary Judgment (ECF No. 138) is GRANTED IN

16  PART AND DENIED IN PART.

17           1.       Plaintiff Aoki's Third Claim for Relief for Misappropriation of Trade Secrets

18                    against Defendant Gilbert is DISMISSED as barred by the applicable statute of

19                    limitations.

20           2.       To the extent that Plaintiffs' sixth, seventh, and ninth claims for relief are based on

21                    alleged misappropriation of trade secrets, those claims are preempted by the

22                    California Uniform Trade Secrets Act.

23  _____

24  [11] Defendants argue for the first time on reply that Plaintiffs' allegations with respect to the safety of the patients being treated by Defendants are preempted.  (ECF No. 160 at 8 (citing *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001) and *PhotoMedex, Inc. v. Irwin*, 601 F3d.

25  919, 924 (9th Cir. 2010)).)  Even though the Court is not required to address this argument raised

26  for the first time on reply, the Court finds Defendants' cited cases inapposite.  Both cases involved plaintiffs who alleged defendants made fraudulent representations to the FDA.  In both

27  cases, the respective courts held that such tort claims were preempted by federal law.  Here, there are no allegations that the Defendants made misrepresentations to the FDA.  Thus, Defendants

28  have not met their burden to dismiss the claims on this ground.

3.   In all other respects, Defendants' Motion is DENIED.  The Court does not preclude Defendants from bringing later motion after the factual record has developed.

4.   The Court will evaluate further motions to determine whether "successive motions and papers become so harassing and vexatious that they justify sanctions[.]"  *Aetna Life Ins. Co. v. Alla Med. Servs., Inc.*, 855 F.2d 1470, 1476 (9th Cir. 1988).

**IT IS SO ORDERED.**

Dated: July 22, 2014

Troy L. Nunley
United States District Judge

23