1
2
3
4
5
6
7

8                        UNITED STATES DISTRICT COURT

9                        EASTERN DISTRICT OF CALIFORNIA

10

11   THOMAS T. AOKI, M.D., et al.,              No.  2:11-CV-02797-TLN-CKD

12              Plaintiffs,

13        v.                                    **ORDER**

14   GREGORY FORD GILBERT, et al.,

15              Defendants.

16

17          The matter is before the Court on the Motion to Bifurcate (ECF No. 194) and the Motion

18   to Compel Arbitration (ECF No. 195) submitted by Defendants Gregory Ford Gilbert

19   ("Defendant Gilbert"), Bionica, Inc. ("Bionica"), Bionica, Int'l, Inc., David S. Bradley, Kevin J.

20   Buckman, Faising S. Chui, Diabetic Innovations, LLC, Diabetic Life Pulse of Louisiana, LLC,

21   Diabetic Life Pulse, Inc., Richard L. Girard, Melanie J. Kunz, Life Pulse Health, LLC, Limi

22   Management, Inc., Michael R. McCarthy, MedEdCo, LLC, John D. Mullen, Marc R. Rose,

23   Timothy Tight, Trina Health of Newport Beach, LLC, Trina Health, LLC, and Glenn A. Wilson

24   (collectively "Defendants" or "Moving Defendants").  Plaintiffs Thomas Aoki ("Aoki") and Aoki

25   Diabetes Research Institute ("ADRI") (collectively "Plaintiffs") filed a single Opposition to the

26   Motions to Bifurcate and to Compel Arbitration.  (ECF No. 199.)  For the reasons set forth below,

27   Defendants' Motion to Bifurcate is DENIED, and Defendants' Motion to Compel Arbitration is

28   DENIED.

                                               1

1

## I.   Background

2

### A.  Procedural Posture

3

#### i.  Procedural History

Plaintiffs brought this action on October 24, 2011.  (Compl., ECF No. 1.)  The operative complaint asserts nine claims for relief: (1) patent infringement; (2) copyright infringement; (3) trade secret misappropriation; (4) false and misleading advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1); (5) false and misleading advertising under California Business and Professions Code § 17500; (6) breach of fiduciary duty; (7) breach of confidential relationship; (8) unfair competition under the Lanham Act, 15 U.S.C. § 1125 (a); and (9) unfair competition under California Business and Professions Code § 17200.  (First Am. Compl., ECF No. 135.) Plaintiffs name over a dozen defendants and allege all claims except the sixth and seventh claims against all defendants.  Plaintiffs allege the sixth and seventh claims against Defendant Gilbert only.  (ECF No. 135.)

On March 19, 2013, this Court issued an order on Defendants Gary J. Mugg, Deepal Cemo Medical Solutions, LLC, Sammy F. Cemo, Deepal Wannakuwatte, Health Innovations, LP, ACSRC, LLC, and Shuyuan "Sherry" Tang's (collectively "Hayward Clinic Defendants") Motion to Compel Arbitration and Stay Proceedings (ECF No. 91) based on an arbitration clause contained in a 1987 licensing agreement between Aoki and AMSys Corp (hereinafter "1987 License").  (ECF No. 132 at 5.)  In that Order, the Court found there was insufficient evidence to determine whether the Hayward Clinic Defendants have standing to compel arbitration as non-signatories to the 1987 License and therefore denied the motion.  (ECF No. 132 at 14.)

On July 23, 2014, this Court issued an Order Granting in Part and Denying in Part the Motion to Dismiss (ECF No. 175) submitted by Defendants Bionica, Inc. ("Bionica"), Bionica Int'l, Inc., Gregory F. Gilbert ("Defendant Gilbert"), Trina Health of Newport Beach, LLC, and Trina Health.[1]  (ECF No. 138.)  In that Order, the Court determined that Plaintiff Aoki's third claim for relief for misappropriation of trade secrets against Defendant Gilbert is barred by the

_____

[1] Although the motion was filed as a motion to dismiss, the Court determined that the motion was more appropriately addressed as a motion for summary judgment.  (ECF No. 138.)

1  applicable statute of limitations, thereby dismissing that claim.  (ECF No. 175 at 23.)

2  Additionally, the Court found that to the extent that Plaintiffs' sixth, seventh, and ninth claims for

3  relief are based on alleged misappropriation of trade secrets, those claims are preempted by the

4  California Uniform Trade Secrets Act.  (ECF No. 175 at 21.)  To the extent that these claims are

5  not derived from the California Uniform Trade Secrets Act, they still remain valid.  (ECF No. 175

6  at 21-22.)

7      On August 26, 2014, this Court issued an Order for Consent Judgment and Permanent

8  Injunction, settling Plaintiffs' claims against Defendants Deepal Cemo Medical Solutions, LLC,

9  Sammy F. Cemo, Deepal Wannakuwatte, Health Innovations, LP, ACSRC, LLC, and Shuyuan

10  "Sherry" Tang.  (ECF No. 187.)

11      On August 26, 2014, Plaintiffs voluntarily dismissed, with prejudice, Defendant Gary J.

12  Mugg.  (ECF No. 188.)

13      On September 15, 2014, Defendants filed their Answer to Plaintiffs' First Amended

14  Complaint ("FAC") with a Counterclaim against all Plaintiffs.  (ECF No. 192.)

15          **B.  Plaintiff's Version of the Facts[2]**

16      Plaintiff Thomas Aoki is a physician who invented, developed, and patented an

17  intravenous insulin therapy known as the metabolic activation therapy, "MAT."  In 1989, Aoki

18  received a patent for the original MAT treatment (hereinafter referred to as the "810 Patent").

19  (ECF No. 135 at ¶ 41.)  The MAT treatment is intended to be administered and supervised by

20  physicians who receive specialized training from ADRI.  (ECF No. 135 at ¶ 43.)  Subsequent to

21  his work on the 810 Patent, Aoki began developing and seeking patents for other methods and

22  systems which, using a similar form of pulsatile intravenous insulin, were designed to treat major

23  diseases suffered by both diabetic and non-diabetic patients.  (ECF No. 135 at ¶ 44.)  Generally

24  speaking, these additional patents cover the following methods of: (1) treating heart disease and

25  cardiovascular disease; (2) treating wounds, promoting healing, and preventing amputations; (3)

26  treating kidney diseases; (4) treating eye and nerve diseases; and (5) improving hepatic glucose

27

28

---

[2] The parties' underlying dispute and the current motion arise out of a business relationship between Aoki and Gilbert that dates back to the mid-1980s. Given the long history of the parties' relationship, and the lack of clarity within the record, the Court recites only the bare minimum facts herein.

1   processing.  (ECF No. 135 at ¶ 45.)

2          Plaintiff ADRI is a non-profit medical research corporation founded in 1986 by Aoki to

3   further research efforts into diabetes and metabolism.  ADRI also provides clinical care for

4   patients with metabolic disorders using the MAT treatment.  (ECF No. 135 at ¶ 40.)  ADRI has a

5   license to use, practice, and otherwise perform the MAT technology contained within the patents.

6   (ECF No. 135 at ¶¶ 47–48.)

7          According to Aoki, at some point he retained Gilbert, a California attorney, to act as his

8   personal counsel.[3]  At the same time, Gilbert became engaged in business transactions with Aoki

9   and set up legal entities, including ADRI, to employ Aoki's technology.  Gilbert also appointed

10  himself as a director and officer of those entities and acted as counsel.  During the period in

11  which Gilbert acted as legal counsel to Plaintiffs, as well as within his role as an officer and

12  director of ADRI, he acquired a significant amount of confidential information.  (ECF No. 135 at

13  ¶ 51.)  Gilbert purportedly drafted nearly every legal document for both the entities and for Aoki;

14  Gilbert also provided legal advice to Plaintiffs over the course of many years, until their

15  relationship dissolved in late 2002 or early 2003.  (ECF No. 135 at ¶ 49.)

16         After Plaintiffs' relationship with Gilbert ended, Gilbert allegedly falsely asserted that he,

17  or entities with which he is affiliated, held all right, title and interest in the MAT treatment.  More

18  specifically, Gilbert purportedly acted in concert with the remaining Defendants to set up clinics

19  where the MAT treatment is now offered.  Gilbert also allegedly made false and misleading

20  statements to patients or would-be patients regarding the status and efficacy of the MAT

21  treatment as well as regarding available payment options.  (ECF No. 135 ¶¶ 52, 59, 94–95.)

22                    **C.  Defendant Gilbert's Version of the Facts**

23         Gilbert states that he has been involved in the development of diabetes technologies for

24  more than twenty-seven years, ever since his daughter was diagnosed with Type 1 diabetes at age

25  2.  (Gilbert Decl. in Supp. of Defs.' Mot to Dismiss, ECF No. 141 at ¶ 2.)  At that time, Gilbert

26  was a practicing lawyer and the Chief Executive Officer of an international innovative pump

27
28  ---
[3] Plaintiffs brought a motion to disqualify Gilbert and affiliated counsel James L. Brunello. (ECF Nos. 16, 41.) The Court denied the motion without prejudice finding Plaintiffs failed to show that the course of former representation is substantially related to the current litigation. (Mem. & Order, ECF No. 67.)

1    manufacturing company.  (ECF No. 141 at ¶ 2.)  After his daughter's diagnosis, Gilbert began

2    work on designing an insulin pump for use in the treatment of diabetes.  (ECF No. 141 at ¶ 2.)

3    Due to his increasing diabetes-related work, Gilbert eventually met Aoki, and the two thereafter

4    partnered together to develop and commercialize a new approach to the treatment of diabetes

5    using Aoki's technology and Gilbert's pumps.  (ECF No. 141 at ¶ 2.)[4]

6        Gilbert formed ADRI in approximately 1986 or 1987 and thereafter served as its

7    Executive Director.  (Gilbert Decl. in Opp'n to Mot. to Disqualify, ECF No. 45 at ¶ 7.)  After

8    realizing that fund-raising presented an issue for a non-profit entity, Gilbert formed a "for profit"

9    company, AMSys, to raise additional funds, and thereafter served as its CEO.  (ECF No. 45 at ¶¶

10   8–9.)  In 1989, Gilbert began working with Bionica in Australia to develop a pump for pulse

11   insulin treatment and later became President and CEO of Bionica, Inc.  (ECF No. 45 at ¶¶ 1, 10.)

12       **D.  Licensing Agreements**

13           *i.   1987 AMSys License*

14       According to Gilbert, at AMSys' formation, Aoki licensed his technology to AMSys

15   pursuant to a Licensing Agreement signed by Aoki and AMSys in November 1987 (hereinafter

16   the "1987 License").  (ECF No. 45 at ¶ 9.)  Pursuant to the Agreement, Aoki transferred to

17   AMSys "an exclusive worldwide license to utilize the Subject Technology and Patent Rights as

18   they exist from time to time, and to manufacture, use, have manufactured and sell the Licensed

19   Products manufactured by it or pursuant to its request in the Territory."  (Defs.' Mot. to Bifurcate,

20   License Agreement, Ex. A, ECF No. 194-2 at § 2.1.)  The 1987 License defines "Subject

21   Technology" as "the ideas, methods, inventions, improvements, and techniques heretofore or

22   hereafter developed by or for [Aoki] or [ADRI] during the lifetime of this agreement as they shall

23   relate, inter alia, to restoring and maintaining normal metabolic fuel processing in a patient by

24   means of a method or algorithm for delivering insulin which may be combined with the

25   administration of carbohydrates and/or other drugs."  (ECF No. 194-2 at § 1.1.)

26       The 1987 License defines "Patent Rights" as "all patents or patent applications . . . ,

_____

27   [4] Plaintiffs object to portions of Gilbert's declaration on various grounds but do not object to the paragraph as cited
     above. (Pls.' Objs. Gilbert Decl., ECF No. 157.) Therefore, because the Court does not rely on the portions of the

28   declaration to which Plaintiffs object, it need not resolve Plaintiffs' objections.

including inventions claimed by such patents or patent applications, relating to the [s]ubject [t]echnology, owned or filed by [Aoki]."  (ECF No. 194-2 at § 1.4.)  Finally, the Agreement provides that "any disagreement arising under the provisions of this agreement shall be decided by arbitration in Chicago in accordance with the rules then obtaining of the American Arbitration Association." (ECF No. 194-2 at § 16.1.)

*ii.  As to Gilbert*

In 1992 and 1999, through a series of transfers and stock purchases, a different company, AMTech, became the owner of the 1987 License to use the MAT technology, and another company, Diabetex International Inc. ("Diabetex"), became its sole shareholder.  (Aoki Decl. in Opp'n to Mot. to Dismiss, ECF No. 77 at ¶ 16; Gilbert Decl. in Opp'n to Mot. to Disqualify, ECF No. 45 at ¶¶ 14–16.)  Gilbert alleges he became the owner of the AMSys License through a 2001 Settlement Agreement (Settlement Agreement and Release, Ex. C, ECF No. 194-2) (hereinafter the "2001 Settlement") in which AMTech and Diabetex conveyed all of their respective rights and interests in the 1987 License to him.  (ECF No. 45 at ¶¶ 19–22.)  Gilbert signed the 2001 Settlement three times: as Administrative Director of ADRI; as President of Hamilton-May Corp.; and in his individual capacity.  (Settlement Agreement and Release, Ex. C, ECF No. 194-2 at 68.)  Aoki also signed the 2001 Settlement in his individual capacity. (Settlement Agreement and Release, Ex. C, ECF No. 194-2 at 68.)

*iii.  As to Bionica*

On January 24, 1992, Aoki and AMSys executed a modification of the 1987 License to allow AMSys to enter into a Development Agreement with Connecticut Innovations Incorporated ("CII"), and to provide AMSys with the right to grant CII a non-exclusive, royalty-free license of the MAT technology as security in the event of default.  (Aoki Decl. in Supp. of Pls.' Opp'n to Mot. to Dismiss, Ex. 8, ECF No. 77-8 at 3.)  The Development Agreement, by which CII provided a development funding loan to AMSys, was approved on March 3, 1992.  (Development Agreement Ex. B, ECF No. 194-2.)

In 2005, after AMSys's alleged default on the loan, CII contracted to sell and Bionica to purchase "all right, title, and interest of CII in and to the Development Agreement."

6

1    (Development Purchase Agreement Ex. E, ECF No. 194-2 at 72) (hereinafter referred to as the

2    "CII License").  Gilbert signed the CII License in his capacity as CEO and President of Bionica,

3    Inc.  (Development Purchase Agreement Ex. E, ECF No. 194-2 at 84.)

4           In a letter dated January 31, 2007, from Aoki to Frank Dinucci, President and Executive

5    Director of CII, Aoki asserts that the CII License assigned to Bionica is in violation of the 1992

6    Development Agreement, and is therefore invalid. (Aoki Decl. in Supp. of Pls.' Opp'n to Mot. to

7    Dismiss, Ex. 9, ECF 77-9.)  Furthermore, in that letter Aoki states, "The agreement dated 24

8    January 1992 between me and AMSys is hereby terminated."  (ECF No. 77-9.)

9                              *iv.  As to Remaining Defendants*

10          Defendants state that all remaining Defendants operate under sublicenses to use the MAT

11   technology granted by Gilbert and Bionica. (Defs' Mot. to Arbitrate, ECF No. 195 at ¶¶ 3, 5–6.)

12   None of the remaining Defendants are signatories to the 1987 License or the 2001 Settlement.

13   (Defs.' Mot. to Bifurcate, License Agreement, Ex. A, ECF No. 194-2; Settlement Agreement and

14   Release, Ex. C, ECF No. 194-2.)

15   **II.    Legal Standard**

16          **A.  Bifurcation**

17          Pursuant to Federal Rule of Civil Procedure 42(b), the district court may order separate

18   trials of one or more issues or claims "[f]or convenience, to avoid prejudice, or to expedite and

19   economize."  "While separation of issues is not to be routinely ordered, it is important that it be

20   encouraged where experience has demonstrated its worth."  Fed. R. Civ. P. 42(b) Advisory

21   Committee Notes (1966 Amend).  The court has broad discretion in deciding whether to bifurcate

22   a trial.  *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir.2002).  Courts may consider

23   several factors in determining whether bifurcation is appropriate, including whether the issues are

24   clearly separable, and whether bifurcation would increase convenience and judicial economy,

25   reduce the risk of jury confusion, and avoid prejudice to the parties.  *See Hirst v. Gertzen*, 676

26   F.2d 1252, 1261 (9th Cir.1982).  The party requesting bifurcation has the burden of proving that

27   bifurcation is justified given the particular circumstances.  *Spectra-Physics Lasers, Inc. v.*

28   *Uniphase Corp.*, 144 F.R.D. 99, 101 (N.D.Cal.1992); *Afshar v. City of Sacramento*, No. CIV S-

1    04-1088LKKJFB, 2007 WL 779748, at *1 (E.D. Cal. Mar. 14, 2007) ("Defendant has failed to

2    meet its burden of demonstrating that bifurcation is warranted."); *Princeton Biochemicals Inc. v.*

3    *Beckman Instruments Inc.,* 180 F.R.D. 254, 256 (D.N.J. 1997) ("[T]he party seeking bifurcation

4    has the burden of demonstrating judicial economy would be promoted and that no party would be

5    prejudiced by separate trials.") (citation omitted).

6         **B.  Arbitration**

7         "The [Federal Arbitration Act ("FAA")] was enacted in 1925 in response to widespread

8    judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740,

9    1745 (2011). Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable,

10    save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.

11    § 2.  Section 2 of the FAA "reflect[s] . . . a 'liberal federal policy favoring arbitration.'"

12    *Conception*, 131 S. Ct. at 1745 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*.,

13    460 U.S. 1, 24 (1983)).  At the same time, however, § 2 reflects "'the fundamental principle that

14    arbitration is a matter of contract.'" *Id*. (quoting *Rent-A-Center, W., Inc. v. Jackson*, 130 S. Ct.

15    2772, 2776 (2010)).  "[Section] 3 requires courts to stay litigation of arbitral claims pending

16    arbitration of those claims in accordance with the terms of the agreement; and § 4 requires courts

17    to compel arbitration 'in accordance with the terms of the agreement' upon the motion of either

18    party to the agreement . . . ." *Concepcion*, 131 S. Ct. at 1748.  Thus, "[b]y its terms, the [FAA]

19    leaves no place for the exercise of discretion by a district court, but instead mandates that district

20    courts shall direct the parties to proceed to arbitration on issues as to which an arbitration

21    agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)

22    (citing 9 U.S.C. §§ 3, 4) (emphasis in original).

23         "The standard for demonstrating arbitrability is not a high one; in fact, a district court has

24    little discretion to deny an arbitration motion, since the [FAA] is phrased in mandatory terms."

25    *Republic of Nicaragua v. Standard Fruit Co*., 937 F.2d 469, 475 (9th Cir. 1991).  "Moreover, the

26    scope of an arbitration clause must be interpreted liberally and 'as a matter of federal law, any

27    doubts concerning the scope of arbitrable disputes should be resolved in favor of arbitration.'"

28    *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004) (quoting *Moses H. Cone*,

460 U.S. at 24; *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1144 (9th Cir. 1991); *French v. Merrill Lynch*, 784 F.2d 902, 908 (9th Cir. 1986)).  Thus, "[a]n order to arbitrate . . . should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960).

   In determining whether to compel arbitration, the court may not review the merits of the dispute.  Instead, the court must limit its inquiry to three steps: (1) whether the contract containing the arbitration agreement evidences a transaction involving interstate commerce; (2) whether there exists a valid agreement to arbitrate; and (3) whether the dispute(s) fall within the scope of the agreement to arbitrate.  *Standard Fruit*, 937 F.2d at 476-78.

**III.   Analysis**

   This litigation has now reached its fourth year.  In that time, parties have filed multiple motions to dismiss, two of which were treated by the Court as motions for summary judgment (ECF Nos. 6, 7, 8, 9, 10, 68, 73, 112, 138), a motion to disqualify attorneys (ECF No. 16); an unsuccessful motion to compel arbitration (ECF No. 54, 91); a motion for permanent injunction (ECF No. 167); as well as the pending motions to bifurcate, arbitrate, and to strike (ECF Nos. 194, 195 and 203).  The Court has exhausted its patience for the repetitive and litigious filings in this litigation and admonishes both parties that further filings of this nature will not be well-received.  Therefore, following the issuance of this order, the Court will proceed in setting a date for trial, beginning with an order instructing the parties to submit a joint status report.

   **A. Motion to Bifurcate**

   Defendants briefly discuss each of the factors the Court may consider on a motion to bifurcate, concluding that "bifurcation is patently beneficial in every way," yet they do not expand upon their conclusory statements with any developed legal analysis or evidence.  (ECF No. 194 at ¶¶ 17–18.)  "Rule 42(b) merely *allows*, but does not require a trial court to bifurcate cases." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004).  As the party seeking bifurcation, Defendants have the burden of proving that bifurcation is warranted

9

1    based on the facts of this case. *Spectra-Physics*, 144 F.R.D. at 101. The Court finds that

2    Defendants have failed to meet their burden to demonstrate that bifurcation is justified.

3    Therefore, the Court denies Defendants' motion for bifurcation for the following reasons.

4           First, Defendants fail to provide any rationale as to why bifurcation would make the

5    adjudication of this case more convenient or support judicial economy. *See Mosqueda v. Cnty. of*

6    *Los Angeles*, 171 F. App'x 16, 17 (9th Cir. 2006) (holding bifurcation warranted where separate

7    trials served the interests of judicial economy). Defendants confuse ordering separate trials with

8    compelling arbitration, stating simply that arbitration would be "obviously" more convenient than

9    trial, because "such is the purpose of arbitration." (ECF No. 194 at ¶ 17a.) On its own, this

10   argument is not sufficient to support bifurcation, although Defendants vaguely assert that

11   "expedition is obvious, and economy equally so, to both the Court and to the Parties." (ECF No.

12   194 at ¶ 17c.) Defendants fail to establish which claims should be separated (with or without

13   arbitration) and how bifurcation would be conducive to expedition and economy. Without an

14   adequate analysis from Defendants, the Court finds that this factor weighs against bifurcation.

15          Second, the Court considers whether either party will suffer prejudice as a result of

16   bifurcation. *Rivera v. NIBCO, Inc*., 2006 WL 845925, at *7 (E.D. Cal. 2006) (holding that

17   immigration status was so prejudicial that separate trial on issue of damages was warranted, with

18   further precautions to preserve confidentiality of immigration status ordered); *Green v. Baca*, 226

19   F.R.D. 624, 633 (C.D. Cal. 2005) (holding that bifurcation is appropriate when needed to protect

20   individual officer defendants from prejudice that might result if a jury heard evidence regarding

21   the municipal defendant's allegedly unconstitutional policies). Defendants claim there is no

22   prejudice against Plaintiffs at issue here. (ECF No. 194 at ¶ 17b.) However, the Court finds that

23   this factor weighs in favor of denying bifurcation in this matter. Plaintiffs point out that the

24   instant motion comes three years after the filing of the original complaint and after judgment of

25   multiple dispositive motions. *See Lam Research Corp. v. Schunk Semiconductor,* 65 F. Supp.3d

26   863, 867 (N.D. Cal. 2014) (denying bifurcation where separate trials would cause unnecessary

27   delay in an already impacted trial schedule). "[P]rejudice . . . may simply amount to unfair delay

28   of the final disposition of the matter." *Willemijn HoudstermaatschaapijBV v. Apollo Computer*

1   *Inc.*, 707 F. Supp. 1429, 1435 (D. Del. 1989) (citing *H.B. Fuller Co. v. Nat'l Starch & Chem.*

2   *Corp.*, 595 F. Supp. 622, 625 (D. Del. 1984)).  Plaintiffs may well face undue prejudice from any

3   unfair delay in proceedings caused by bifurcation.

4          Third, Defendants have failed to indicate how bifurcation will reduce the risk of confusion

5   for the jury.  *Hirst*, 676 F.2d at 1261 (upholding district court's decision to bifurcate in order to

6   avoid unnecessary jury confusion).  Defendants contend that bifurcation would massively

7   simplify the proceedings, but they do not state with any specificity which particular claims are

8   likely to be confusing to a jury or why.  (ECF No. 194 at ¶ 17d.)  Although Defendants vaguely

9   raise concerns about jury confusion over patent infringement issues, "[i]n patent cases, as in

10  others, separate trials should be the exception, not the rule."  *Laitram Corp. v. Hewlett-Packard*

11  *Co.*, 791 F. Supp. 113, 114 (E.D. La. 1992).  *See also Kennecott Corp. v. Kyocera Int'l Inc.*, No.

12  80-0516-R(M), 1988 WL 268170, at *1 (S.D. Cal. May 11, 1988).  Thus, Defendants have not

13  demonstrated that the risk of confusion in the instant case warrants bifurcation.

14         Finally, Defendants state that the issues in this case are "totally separable," but Defendants

15  fail to provide any support for this conclusory statement.  (ECF No. 194 at ¶ 17e.)  Defendants'

16  argument that some claims arise under common law and some arise under statutory law does not

17  prove that the issues are so distinct and separable that a separate trial of some issues may be had

18  without injustice.  *United Air Lines, Inc. v. Wiener*, 286 F.2d 302, 305 (9th Cir. 1961) (holding

19  that bifurcation is unwarranted where the issues of damages and liability are so interwoven that

20  one cannot be submitted to the jury independently without confusion and uncertainty).  In

21  addition, it is unclear from the record how much evidence would overlap, such that it would

22  require one or more parties to present the same evidence in multiple trials.  *Afshar*, 2007 WL

23  779748, at *1 (denying bifurcation where bifurcating the trial as suggested by defendant would

24  require the repetition of both lay and expert witness testimony); *Willemijn*, 707 F. Supp. at 1434

25  ("[A]lthough a minor evidentiary overlap may not strongly militate against bifurcation, it

26  certainly does not favor bifurcation.").  For all these reasons, the Court denies Defendants'

27  motion for bifurcation.

28  / / /

**B.  Motion to Compel Arbitration**

The Court denies Defendants' motion to compel arbitration on two grounds.  First, the Court finds that the law of this case prevents a ruling in favor of arbitration.  Second, the Court finds that, even if the Court found Defendants' claims eligible for arbitration, they have waived their right to arbitration by virtue of their delay in filing.

*i.  Judge England's Ruling*

On March 19, 2013, United States District Court Judge Morrison C. England, Jr., Eastern District, California, issued an order in this case denying Defendants Gary J. Mugg, Shuyuan "Sherry" Tang, Health Innovations, LP, ACSRC, LLC, and Cheng Shao's (collectively "the Hayward Clinic Defendants") motion to compel arbitration.  (ECF No. 132.)  Like the Moving Defendants asking the Court to compel arbitration in the instant motion, the Hayward Clinic Defendants sought arbitration pursuant to the 1987 Agreement signed by Aoki and AMSys.  (ECF No. 132 at 11.)  The Hayward Clinic Defendants argued that, although they were not signatories to the agreement, they were successors in interest to the agreement.  (ECF No. 132 at 11-13.)  Judge England conducted a careful analysis of the underlying agreement, relying in part on declarations and other supporting documentation submitted by Defendant Gilbert.  (ECF No. 132 at 12–15.)  Ultimately, the Court found:

> Given Gilbert's sworn statement that Aoki has rejected [the 1987 Agreement] as having any binding force and has refused to give consent to these sublicenses, it is unclear whether the Hayward Clinic Defendants have valid sublicenses under the Agreement.  Only when there is no genuine issue of material fact concerning the formation of an agreement should a court decide as a matter of law that the parties in the litigation are also parties to the agreement.  *See Concat LP*, 350 F. Supp. 2d at 804.  The only evidence before the Court regarding the Hayward Clinic Defendants' status as sublicensees is Gilbert's declaration.  Rather than conclusively establish that the Hayward clinic Defendants are parties to the Agreement by virtue of owning valid sublicenses, Gilbert's declaration makes clear that there are genuine issues of material fact regarding the Agreement and the validity of sublicenses.

(ECF No. 132 at 14.)  In spite of this ruling, the Moving Defendants in the instant motion seek this Court's order to compel arbitration on identical grounds.  (Mot. to Compel Arb., ECF No. 195 at 10 ("Any and all issues regarding the November 20, 1987 License Agreement … should be

12

1   Arbitrated, with all other issues subject to Judicial Review.").)

2        Similar to the Court's previous order regarding the Hayward Clinic Defendants, none of

3   the Defendants in the instant motion is a signatory to the 1987 Agreement.  (Defs.' Mot. to

4   Bifurcate, License Agreement, Ex. A, ECF No. 194-2.)  "[W]hen a nonsignatory seeks to enforce

5   an arbitration agreement/provision against a signatory . . . the nonsignatory bears the burden to

6   establish he or she is a party to the arbitration agreement/provision covering the dispute."  *Jones*

7   *v. Jacobson*, 195 Cal. App. 4th 1, 15 (2011), *as modified* (June 1, 2011).  Moving Defendants'

8   motion does not even attempt to proffer sufficient facts to convince this Court how the analysis

9   herein should vary from Judge England's analysis with respect to the Hayward Clinic Defendants.

10        Although Moving Defendants' fail to clearly put forth the argument, the Court

11   acknowledges that Defendants Gilbert and Bionica differ slightly from the Hayward Clinic

12   Defendants, who claim arbitration rights on the basis of sublicenses arising from the 1987

13   Agreement.  Instead, Defendant Gilbert alleges that his license arose from the 2001 Settlement,

14   while Defendant Bionica maintains that its licenses arose from the CII License.  (ECF No. 195 at

15   ¶¶ 4, 8.)  However, this factual distinction does not dissuade this Court from applying Judge

16   England's legal analysis.  In its order on Defendants' motion for summary judgment, the Court

17   found that the same issues of material fact that prevented arbitration also prevented summary

18   judgment in favor of Defendants Gilbert and Bionica.  (ECF No. 175 at 12.)  Therefore, it remains

19   unclear whether Defendants Gilbert and Bionica have valid sublicenses stemming from the 1987

20   Agreement, which prevents this Court from compelling arbitration.  (*See* ECF No. 132 at 14.)

21        Similarly, Defendants Bionica, Int'l, Inc., David S. Bradley, Kevin J. Buckman, Faising S.

22   Chui, Diabetic Innovations, LLC, Diabetic Life Pulse of Louisiana, LLC, Diabetic Life Pulse,

23   Inc., Richard L. Girard, Melanie J. Kunz, Life Pulse Health, LLC, Limi Management, Inc.,

24   Michael R. McCarthy, MedEdCo, LLC, John D. Mullen, Marc R. Rose, Timothy Tight, Trina

25   Health of Newport Beach, LLC, Trina Health, LLC, and Glenn A. Wilson maintain that they are

26   lawfully using the MAT technology by virtue of sublicenses granted by Defendants Gilbert and

27   Bionica that were ultimately derived from the 1987 Agreement.  (ECF No. 195 at ¶ 12.)  Because

28   the validity of the remaining Moving Defendants' sublicenses depends on the validity of

13

1    Gilbert/Bionica's licenses, there are, by extension, genuine issues of material fact concerning the

2    formation of their agreements.  (*See* ECF No. 175 at 10, n.8.)  Therefore at this stage, the Court

3    cannot determine as a matter of law that the remaining Moving Defendants have an existing, valid

4    agreement to arbitrate.

5                          *ii.   Waiver of the Right to Arbitration*

6          Even if Moving Defendants had provided sufficient argument distinguishing their claims

7    for arbitration from those of the Hayward Clinic Defendants, the Court would still dismiss their

8    motion.  Plaintiffs argue that Moving Defendants have effectively waived their right to arbitrate

9    because Moving Defendants have filed multiple dispositive motions in the case and actively

10   participated in litigation for the past three years, including a prior motion to compel arbitration.

11   (ECF No. 199 at 14.)  The Court agrees.

12         To demonstrate waiver of the right to arbitrate, a party must show: "(1) knowledge of an

13   existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice

14   to the party opposing arbitration resulting from such inconsistent acts."  *United States v. Park*

15   *Place Assocs., Ltd*., 563 F.3d 907, 921 (9th Cir.2009) (internal quotation marks and citation

16   omitted).

17         First, the Court finds that Defendants were aware or should have been aware of their

18   potential existing right to compel arbitration when the Hayward Clinic Defendants first filed their

19   motion to compel arbitration on February 16, 2012.  (ECF No. 54.)  As Plaintiffs point out,

20   Defendant Gilbert was the attorney of record for all remaining defendants at that time, and even

21   filed a declaration in support of the motion.  (ECF No. 54-2.)  That motion was subsequently re-

22   filed with the Court on August 16, 2012 (ECF No. 91), wherein Defendants Gilbert, Bionica,

23   Bionica Int'l, Inc., Trina Health, LLC, and Trina Health of Newport Beach, LCC submitted a

24   filing with the Court asking that the entire case be heard in arbitration if the Hayward Clinic

25   Defendant's motion was granted.  (ECF No. 100.)

26         Second, the Court finds that Moving Defendants acted inconsistently with their belief in

27   their existing right to arbitration by filing multiple dispositive motions to dismiss and motions for

28   summary judgment before filing the instant action.  *Defrees v. Kirkland*, 579 F. App'x 538, 541

                                              14

1   (9th Cir. 2014) ("Defendants waived their right to compel arbitration . . . by waiting until after

2   their first motion to compel had proved fruitless.").  In particular, Moving Defendants have filed

3   two motions for summary judgment asking the Court to enter judgment in their favor based

4   specifically on the licensing rights arising from the 1987 Agreement —the same licensing rights

5   that they now argue should be the subject of compelled arbitration.  (ECF Nos. 68, 138.)[5]  Where

6   "a party moves for summary judgment through a motion including or referring to 'matter outside

7   the pleading,' . . . that party has made a decision to take advantage of the judicial system and

8   should not be able thereafter to seek compelled arbitration."  *Khan v. Parsons Global* 521 F.3d

9   421, 427 (D.C. Cir. 2008); *see also Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1120 n. 2

10  (9th Cir. 2008) (adopting the reasoning employed in *Khan v. Parsons Global* as to the waiver

11  defense).  Defendants will not be permitted to drain the Court's resources by ignoring previous

12  rulings and redressing the same legal arguments in hopes of a better outcome.

13          Third, the egregious three year delay in filing this motion has substantially prejudiced

14  Plaintiffs due to the additional time and expenses incurred in addressing multiple motions filed

15  before Defendants sought arbitration.  *St. Agnes Medical Center v. PacficiCare of Calif.*, 31

16  Cal.4th 1187, 1205 (2003) (holding the prejudice results from a party's expenditure on defending

17  against motions that reflect a position on arbitrability).  Moreover, Moving Defendants' delay has

18  also undermined the entire purpose of arbitration agreements by denying parties the specific

19  benefit intended by an arbitration agreement – "speedy and relatively inexpensive" dispute

20  resolution.  *Id*.at 1204.  For these reasons, the Court finds that Defendants have waived their right

21  to arbitration.

22  **IV.    Conclusion**

23          For the foregoing reasons, Moving Defendants' Motion to Bifurcate (ECF No. 194) and

24  Motion to Compel Arbitration (ECF No. 195) are hereby DENIED.

25

26

27  ───────────────────
    [5] The first motion to dismiss was filed before all Moving Defendants were properly named in the suit.  (ECF No. 98)
    However, the second motion to dismiss (ECF No. 138) was filed by Trina Health of Newport Beach, LLC, Trina
    Health, LLC, Bionica, Inc., Bionica, Int'l, Inc., and Gilbert, but subsequently joined by the remaining Moving

28  Defendants.  (ECF No. 143.)

Dated:  September 28, 2015

Troy L. Nunley
United States District Judge

16